THE STATE OF OHIO, APPELLEE, *v.* ROUSE, APPELLANT.

(No. 87AP-993—Decided September 13, 1988.)

*Ronald J. O'Brien,* city attorney, *James J. Fais,* city prosecutor, and *Thomas K. Lindsey,* for appellee.

*Thomas M. Tyack & Associates Co., L.P.A., Mark A. Serrott* and *Marcia M. Zand,* for appellant.

HENDRICKSON, J. Appellant, Ted A. Rouse, appeals from his conviction of operating a motor vehicle with a concentration of one-tenth gram or more per two hundred ten liters of breath, R.C. 4511.19(A)(3), entered by the Franklin County Municipal Court. Appellant raises two assignments of error, the first with three subparts, as follows:

"1. The trial court erred in overruling the defendant's motion to suppress evidence in that the defendant's arrest was unconstitutional and unlawful.

"A. A police officer may not break into a private residence without a warrant in order to issue a minor misdemeanor speed citation.

"B. An officer's mere suspicion that a defendant accused of a speed violation might have an odor of alcohol about his person is insufficient to allow the officer to break into the defendant's home without a warrant in order to investigate further.

"C. The trial court erred in overruling the defendant's motion to suppress. The officer herein had no probable cause to arrest defendant at the time of his warrantless entry.

"2. The trial court erred in overruling the motion to suppress the evidence in that the arresting officer observed no violations within his jurisdiction and arrested the defendant outside the officer's jurisdictional authority. The arrest was, therefore, unlawful and unconstitutional."

At approximately 2:05 a.m. on

April 23, 1986, Deputy Douglas E. Edgington of the Franklin County Sheriff's Department observed appellant,[1] as well as persons in two other cars, leaving a bar located at the corner of Fishinger Road and Route 33 in Franklin County, Ohio. All three cars proceeded south on Route 33, and then turned onto Nottingham Road in Upper Arlington with Deputy Edgington behind them. At some point on Nottingham Road, Deputy Edgington clocked the cars as travelling forty-five m.p.h. in an area which had a posted speed limit of twenty-five m.p.h.

Deputy Edgington followed the vehicles to a house on Ridgecliff Road in Upper Arlington, where the three cars turned into the driveway. The deputy parked at the base of the driveway. One person, including appellant, exited each vehicle, and appellant started toward the rear of the house. Deputy Edgington approached the other two people and requested that they display their driver's licenses as he had observed them speeding. At this point, appellant returned to the other two people, and all three defendants became belligerent toward the deputy and would not produce driver's licenses. Deputy Edgington additionally detected a strong odor of alcohol, and observed that all three defendants were unsteady on their feet and slurred their speech. Sensing that the situation could worsen, the deputy told the three to stay there while he contacted the sheriff's office on his radio.

While on the radio, Deputy Edgington observed the last of the defendants disappearing around the back of the house. The deputy yelled at them to halt and then followed them in time to see the last person going into the house. Although he attempted to put his foot in the door, the door closed, whereupon Deputy Edgington kicked the door open.

Inside the house, the defendants again refused to produce driver's licenses and repeatedly ordered the deputy to leave. Appellant called the Upper Arlington police, and when they arrived, Deputy Edgington arrested the three defendants.

Appellant was transported to the Franklin County Jail, where he submitted to a breath-alcohol test and tested .176. He was subsequently charged with, and pleaded not guilty to, speeding, operating a motor vehicle under the influence of alcohol ("OMVI"), and the *"per se"* OMVI offense. Although appellant moved to suppress the results of the breath-alcohol test on the ground that his arrest was unconstitutional and was made without probable cause, the motion was overruled.

Various stipulations were subsequently entered into by appellant and the state, and appellant entered a no-contest plea as to the *"per se"* OMVI charge. As a result, the other two charges were dropped. Appellant was found guilty by the court of the *"per se"* charge, and was sentenced to three days in jail, a fine of $250, and suspension of his driving rights for sixty days. The instant appeal ensued.

In his first assignment of error, appellant challenges his arrest as constitutionally infirm. Essentially, appellant claims that the factors necessary to validate a warrantless arrest in his home were absent in these circumstances. Thus, all evidence stemming from the arrest, most importantly the results of the breath-alcohol test, should have been suppressed.

Freedom from indiscriminate

---

[1] Although only Rouse is a party to this appeal, three persons, including Rouse, were arrested. Hence, the three will be referred to collectively as defendants, and Rouse will be referred to as appellant.

searches and seizures is protected by the Fourth Amendment to the United States Constitution, which guarantees "[t]he right of the people to be secure in their * * * houses * * * against unreasonable searches and seizures * * *." The amendment further provides that "no Warrants shall issue, but upon probable cause * * *." Invasion of the sanctity of the home has thus been recognized as "the chief evil against which the wording of the Fourth Amendment is directed." *United States* v. *United States District Court* (1972), 407 U.S. 297, 313.

Consistent with this notion, judicial interpretation of the amendment has established that a presumption of unreasonableness attaches to all warrantless home entries. *Payton* v. *New York* (1980), 445 U.S. 573; *Welsh* v. *Wisconsin* (1984), 466 U.S. 740; *Coolidge* v. *New Hampshire* (1971), 403 U.S. 443. To overcome the presumption, the burden is placed upon the government to demonstrate the existence of probable cause, which is necessary in all arrests, and also exigent circumstances. *Payton, supra; Welsh, supra.*

Appellant argues that both probable cause and exigent circumstances were lacking under these facts. Probable cause has been defined as "sufficient information, derived from a reasonably trustworthy source, to warrant a prudent man in believing that a * * * [crime] has been committed and that it has been committed by the accused." *State* v. *Timson* (1974), 38 Ohio St. 2d 122, 127, 67 O.O. 2d 140, 143, 311 N.E. 2d 16, 20.

We have no doubt but that Deputy Edgington had probable cause to arrest appellant. The deputy observed appellant leaving a bar at approximately 2:05 a.m. and appellant's driving speed was thereafter clocked at twenty miles over the speed limit. At that point, appellant clearly could have been stopped for a speeding violation. When the deputy did approach appellant and the other two drivers in the driveway of appellant's residence, the deputy detected a strong odor of alcohol emanating from appellant[2]; appellant was unsteady on his feet and his speech was slurred; appellant acted very belligerently toward the deputy; and appellant refused to produce his driver's license upon the deputy's request. Moments later, appellant went into his house, contrary to the deputy's express command to "stay put" or "halt."

Although the stipulations of facts entered into between the parties herein indicates that the deputy then entered the house to further investigate the possibility of an OMVI offense, it appears to this court that sufficient probable cause existed to effect an arrest. Unlike *State* v. *Taylor* (1981), 3 Ohio App. 3d 197, 3 OBR 224, 444 N.E. 2d 481, relied upon in appellant's brief, the arresting officer here was confronted with substantially more evidence of alcohol-influenced behavior than merely a speeding driver and an odor of alcohol, as in *Taylor*.

Given the foregoing, when the deputy encountered further belligerent behavior and a refusal to produce driver's licenses once inside the house,

---

[2] Although appellant emphasizes that the deputy merely suspected that the odor of alcohol came in part or in whole from appellant, inasmuch as the deputy was facing a group of three drivers, who we can surmise were in relatively close proximity to each other and to him, it was reasonable to attribute the odor not to any one of the three defendants, but to all of them.

then probable cause clearly existed to arrest appellant.

Turning to the second issue, that is, whether the warrantless arrest was justified in light of exigent circumstances, this court notes initially that the leading case, *Payton, supra,* specifically declined to consider whether exigent circumstances were present in that case. However, earlier decisions from the United States Supreme Court have established that the scope of exigent circumstances is relatively narrow and has been limited to only a few "carefully delineated" situations. *United States* v. *United States District Court, supra; Welsh, supra.* Chief among the exceptions, as relevant here, are situations involving "hot" or "fresh pursuit" of a suspect and cases where there exists the possibility that important evidence may be destroyed, absent immediate action.

In disputing the existence of exigent circumstances in the instant cause, appellant argues first that the offense which gave rise to the arrest was a misdemeanor and was therefore not sufficiently grave to justify a warrantless arrest in appellant's home. Appellant relies primarily on *Welsh, supra,* in which the Supreme Court concluded that no exigent circumstances were presented which would validate the warrantless home arrest of appellant therein. In *Welsh,* defendant was arrested in his home for OMVI by a police officer who, after talking to witnesses about a single-car accident involving defendant, proceeded directly to defendant's home and arrested him.

The primary difference, however, between the case at bar and *Welsh* lies in the nature of the underlying offense as classified by Ohio and Wisconsin, respectively. The court in *Welsh* placed great emphasis on the fact that in Wisconsin, a first-offense OMVI was classified as a "non-criminal, civil forfeiture offense for which no imprisonment is possible." *Id.* at 754. Ohio, on the other hand, has designated the maximum penalty for a first-offense OMVI as six months' imprisonment, as well as a three-year driving suspension and a fine of $1,000. R.C. 4511.99 and 4507.16. Accordingly, appellant's argument on this point fails because although an OMVI offense was present in both cases, Ohio's treatment of the offense as a jailable, criminal offense manifests an intention to treat OMVI as a serious offense.

In regard to whether exigent circumstances validated the arrest, the court rejects appellant's contention that the deputy was not in hot pursuit of appellant when he entered the home. Hot pursuit commonly involves some sort of a chase, but it has also been recognized that the chase "need not be an extended hue and cry 'in and about [the] public streets.'" *United States* v. *Santana* (1976), 427 U.S. 38, 43.

Appellant herein was asked to produce his license when the deputy confronted him in his front yard. Instead of complying, appellant refused and then retreated into his home, despite the deputy's command to halt. Clearly this was not a situation where a time lapse occurred in which the police officer could have, but chose not to, obtain a warrant. See, *e.g., Welsh, supra.* Here, there was immediate and continuous pursuit of appellant from the moment probable cause arose to arrest. While this court does not condone the deputy's actions in kicking open appellant's door for the crime of OMVI, and although such actions would generally be out of proportion to the underlying offense, the court cannot say that under these facts, appellant's Fourth Amendment rights were violated by the warrantless arrest in

his home. Accordingly, the motion to suppress the evidence arising from the arrest was properly overruled. Appellant's first assignment of error is not well-taken and is overruled.

In his second assignment of error, appellant challenges the authority of the deputy sheriff to arrest appellant within the city limits of Upper Arlington. Appellant argues that the deputy effected an extra-territorial arrest without the requisite probable cause and hot pursuit, *Kettering* v. *Hollen* (1980), 64 Ohio St. 2d 232, 18 O.O. 3d 435, 416 N.E. 2d 598, and that, accordingly, all evidence stemming from the arrest should have been suppressed.

Appellant cites no authority, and we have found none, which purports to limit the territorial jurisdiction of a county sheriff to anything other than the county which he serves. Moreover, the sheriff, as "the chief law enforcement officer in the county;" is generally deemed to have "jurisidiction coextensive with the county, including all municipalities and townships." *In re Sulzman, Sheriff* (1932), 125 Ohio St. 594, 597, 183 N.E. 531, 532.

Accordingly, appellant's second assignment of error is not well-taken and is overruled.

For the foregoing reasons, appellant's assignments of error are hereby overruled, and the judgment of the Franklin County Municipal Court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and REILLY, JJ., concur.

WILLIAM R. HENDRICKSON, J., of the Twelfth Appellate District, sitting by assignment in the Tenth Appellate District.