**CITY OF ELYRIA, Appellee,**

v.

**TRESS, Appellant.**

[Cite as *Elyria v. Tress* (1991), 73 Ohio App.3d 5.]

Court of Appeals of Ohio,
Lorain County.

Nos. 90CA004873 and 90CA004876.

Decided April 10, 1991.

*Jay Grunda,* City Prosecutor, for appellee.

**6**

*Jack W. Bradley*, for appellant.

BAIRD, Presiding Judge.

This cause comes before the court upon the appeal of Martin E. Tress from his convictions for driving under the influence of alcohol, R.C. 4511.19(A)(1), and resisting arrest, R.C. 2921.33(A).

Shortly after 11:00 p.m. on April 20, 1990, Melissa Dempsey was preparing for bed when she heard a loud noise, and felt the trailer in which she lived begin to move. When she went outside to investigate, she saw that a van had backed into the side of her trailer. She observed the appellant and another man, Michael Corn, stumbling around her yard. Dempsey was unable to determine which man had been driving the van.

Both men appeared "disoriented," and, when Dempsey approached appellant, she noticed a strong smell of alcohol about him. When Dempsey confronted the men with the damage done to her trailer, the appellant became verbally abusive. Dempsey returned to her trailer to summon the police. Appellant and Corn entered the appellant's neighboring trailer.

Police officers Michael Bigrigg and Gerald Geinke were the first to respond to Dempsey's call. After interviewing Dempsey and observing the damage to her trailer, the officers knocked at the door of appellant's trailer. When appellant answered the door, Bigrigg explained the nature of Dempsey's complaint, and asked appellant if he had been driving the van. Appellant admitted he had driven the van, but denied hitting the trailer. Bigrigg noticed that appellant's speech was slurred, that his eyes were glassy, and that his balance was poor.

Bigrigg asked appellant to step outside to view the damage to the trailer, but appellant refused to do so. The officer repeated his request, and appellant again refused and began to shut his trailer door. Bigrigg stopped the door and grabbed appellant's hand. When appellant pulled away, he and Bigrigg began scuffling on the floor of appellant's trailer. Eventually, three police officers and a stun gun were required to subdue appellant and place him under arrest.

Appellant was charged with driving under the influence of alcohol, R.C. 4511.19(A)(1), operation of a motor vehicle without reasonable control, R.C. 4511.202, resisting arrest, R.C. 2921.33(A), and disorderly conduct, R.C. 2917.-11(A)(2). Following a bench trial, appellant was acquitted of disorderly conduct and operation of a motor vehicle without reasonable control, and was convicted of driving under the influence of alcohol and resisting arrest. Tress appeals his convictions, and raises the following assignment of error:

### Assignment of Error

"The trial court erred in finding appellant guilty of driving under the influence and resisting arrest in that the findings were against the manifest weight of the evidence."

### *Driving Under the Influence*

■ In support of his assignment of error, appellant contends that a police officer is not permitted to make a warrantless arrest for the misdemeanor offense of driving under the influence of alcohol unless the offense is committed in the officer's presence. Appellant further argues that this allegedly illegal arrest renders invalid his conviction for driving under the influence of alcohol. Both of appellant's arguments are without merit. See *Bucyrus v. Williams* (1988), 46 Ohio App.3d 43, 45–46, 545 N.E.2d 1298, 1299–1301, and *New York v. Harris* (1990), 495 U.S. 14, 18, 110 S.Ct. 1640, 1643, 109 L.Ed.2d 13, 20, respectively. And, in any event, these arguments are un-related to the issue of whether appellant's conviction for driving under the influence of alcohol was against the manifest weight of the evidence.

Although appellant presents no argument to support his claim that his conviction was against the manifest weight of the evidence, and this court is therefore not required to address this claim, App.R. 12(A), in the interest of fairness, we have reviewed the record and find no merit to this claim.

In determining whether a judgment is against the manifest weight of the evidence, this court, " * * * reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * * " *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720.

In the case at bar, there were no conflicts in the evidence. Appellant himself admitted to the police that he had been driving the van. Immediately after the van hit her trailer, Dempsey observed the appellant in an obviously intoxicated state. Shortly thereafter, two police officers also witnessed appellant's obvious intoxication. Appellant's argument is not well taken.

### *Resisting Arrest*

■ Although appellant's assigned error challenges the manifest weight of the evidence on his resisting arrest conviction, his argument speaks only to the legal issue of whether the arrest, upon which his resisting arrest charge was based, was lawful. This court will choose substance over form, and

address the issues raised in appellant's argument rather then those raised in his assignment of error.

Appellant argues that the police made a warrantless entry into his trailer for the purposes of arresting him. Therefore, he argues, his arrest was unlawful and cannot be used as the basis for a charge of resisting arrest. We agree.

At trial, Bigrigg testified regarding appellant's arrest:

" * * * I asked Mr. Tress would he please put on his shoes and step on outside, and I'll show him the damage to the trailer. And he told me he ain't going outside.

"And I again asked him. And at that time, he attempted to shut the door. And as he attempted to shut the door, I stopped it and grabbed his hand. He pulled away. And the next thing, we were in a big confrontation, a wrestle [sic] match, on the floor of his trailer."

Officer Geinke also testified as to the circumstances of appellant's arrest:

"At the point that he was at the door, due to his intoxicated condition and his refusal to cooperate in the accident investigation, he was placed under arrest at that time. Officer Bigrigg advised him he was under arrest.

"At that time, he tried to duck back into the apartment. And I believe Officer Bigrigg was able to block the door before it was slammed on him. We went in, and he was again advised he was under arrest and to discontinue his actions. At this time, he refused to cooperate, and we had to physically restrain him and place him in custody."

It is clear from the officers' testimony that appellant never left his trailer, and that the officers had to enter the trailer to effectuate his arrest. In doing so without a warrant, or appellant's consent, the officers violated the Fourth Amendment to the United States Constitution. Absent probable cause and exigent circumstances, warrantless arrests in the home are prohibited by the Fourth Amendment. *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639. The state does not advance any exigent circumstances justifying the officers' entry, and we find none in the record. In a similar case, the United States Supreme Court held that no exigent circumstances existed to support a warrantless entry into an intoxicated defendant's home where the offense consisted of a non-criminal traffic offense, where the defendant had already arrived at his home and there was no immediate or continuous pursuit from the crime scene, and where the defendant had abandoned his car, leaving little remaining threat to public safety. *Welsh v. Wisconsin* (1984), 466 U.S. 740, 752–753, 104 S.Ct. 2091, 2098–2100, 80 L.Ed.2d 732, 744–745. The court held that the exigent-circumstances exception is

generally limited to the investigation of *felony* offenses. *Id.* The court, and most lower courts addressing the issue, have refused to permit warrantless entries into the home to effectuate arrests for misdemeanor offenses. *Id.*

Because the arrest of appellant violated the Fourth Amendment, it was an unlawful arrest. We therefore turn to the question whether appellant is permitted to resist such an unlawful arrest.

R.C. 2921.33(A) provides:

"No person, recklessly or by force, shall resist or interfere with a lawful arrest of himself or another."

The state relies upon *Columbus v. Fraley* (1975), 41 Ohio St.2d 173, 70 O.O.2d 335, 324 N.E.2d 735, certiorari denied (1975), 423 U.S. 872, 96 S.Ct. 138, 46 L.Ed.2d 102, for the proposition that the above statute also prohibits resisting any *unlawful* arrest. In *Fraley,* the court announced that it was judicially abrogating the common-law rule that one may resist an unlawful arrest. *Id.,* 41 Ohio St.2d at 180, 70 O.O.2d at 339, 324 N.E.2d at 740. However, " * * * the *Fraley* pronouncements must be dicta since that court did not have the resisting arrest statute before it; rather, its ruling involved a Columbus city ordinance which did not make 'lawful arrest' an element of the offense. The legislature has elected to make a 'lawful arrest' an element of R.C. 2921.33(A). Therefore, the *Fraley* court abolished the common-law rule in Ohio, but the element of lawful arrest is still a part of R.C. 2921.33(A)[.]" *State v. Clay* (1988), 43 Ohio Misc.2d 5, 6, 539 N.E.2d 1168, 1169. See, also, *Hoover v. Garfield Heights Mun. Ct.* (C.A.6, 1986), 802 F.2d 168, 174, certiorari denied (1987), 480 U.S. 949, 107 S.Ct. 1610, 94 L.Ed.2d 796.

We agree with the above reasoning; the Ohio statute does not prohibit resisting unlawful arrest. Because the state failed to prove beyond a reasonable doubt a necessary element of the crime of which appellant was convicted, *i.e.,* lawful arrest, his conviction must be reversed. *In re Winship* (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375. Appellant's argument is well taken.

The judgment of the trial court is affirmed in part and reversed in part. The case is remanded to the trial court for further proceedings consistent with this opinion and the law.

*Judgment affirmed in part,*
*reversed in part and*
*cause remanded.*

CACIOPPO, J., concurs.

REECE, J., dissents.

REECE, Judge, dissenting.

I dissent from the holding of the majority. As an initial note, I can find no evidence in the record that the propriety of Tress's arrest was ever questioned in the common pleas court. If a lawful arrest is a necessary element of resisting under R.C. 2921.33(A) and Tress felt insufficient evidence was presented on this issue, he should have addressed this contention in his motion for a judgment of acquittal. Crim.R. 29. Having failed to do so, this court should decline to review the matter for the first time on appeal. *State v. Roe* (1989), 41 Ohio St.3d 18, 25, 535 N.E.2d 1351, 1360; *Akron v. Wright* (Dec. 26, 1990), Summit App. No. 14610, unreported, at 2, 1990 WL 235941. Tress does not suggest, and I cannot conclude, that a plain error was committed in this case. Crim.R. 52(B); see *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus.

Regardless, sufficient evidence was presented to allow the trier of fact—in this case the judge—to conclude that a lawful arrest had been effected. Two independent rationales support this conclusion.

Initially, Tress was not, at the time of his arrest, entitled to the special constitutional protections afforded occupants of private dwellings. In *United States v. Santana* (1976), 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300, 305, the court held that individuals who voluntarily stand in the doorways of their homes—knowingly exposing themselves to public view—are in a public place for Fourth Amendment purposes. A warrantless arrest of such a suspect, supported by sufficient probable cause, may be constitutionally permissible. *Id.* The majority does not question that prior to the arrest, probable cause existed to believe Tress had operated the van while intoxicated, engaged in disorderly conduct, and failed to control his vehicle. *Westlake v. Vilfroy* (1983), 11 Ohio App.3d 26, 11 OBR 39, 462 N.E.2d 1241; *Williams, supra,* 46 Ohio App.3d at 45–46, 545 N.E.2d at 1299.

I am mindful that even in the presence of probable cause, a suspect who is tricked or forced into his doorway by the authorities may not be seized absent exigent circumstances. See *United States v. Morgan* (C.A.6, 1984), 743 F.2d 1158, 1166, certiorari denied (1985), 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490. In the instant case, however, the uniformed officers knocked on Tress's door and he voluntarily appeared to confront them. His belligerent behavior and refusal, upon request, to examine the damage belie any suggestion that he felt pressured by police coercion or domination. Tress's arrest in his doorway was therefore consistent with Fourth Amendment principles. See *United States v. Mason* (C.A.5, 1981), 661 F.2d 45, 47; *United States v. Hoyos* (C.A.9, 1989), 892 F.2d 1387, 1394, certiorari denied (1990), 498 U.S. ——, 111 S.Ct. 80, 112 L.Ed.2d 52.

The events that followed do not negate the validity of the arrest. Gienke testified that *after* Tress was advised he was under arrest, the arrestee attempted to retreat into his trailer, and Bigrigg blocked the door. The officers entered and the scuffle ensued.

It is well settled that a suspect may not defeat a valid arrest that has been set in motion in a public place by escaping into a private dwelling. *Santana, supra,* 427 U.S. at 43, 96 S.Ct. at 2410, 49 L.Ed.2d at 305; *Hoyos, supra,* at 1394–1395; *United States v. Perez* (C.A.2, 1990), 904 F.2d 142, 150, certiorari denied (1990), 498 U.S. ——, 111 S.Ct. 270, 112 L.Ed.2d 226. The officers' "hot pursuit" of Tress into his home was therefore entirely proper. See *State v. Rouse* (1988), 53 Ohio App.3d 48, 51–52, 557 N.E.2d 1227, 1230–1231.

Even if Tress was entitled to the Fourth Amendment protections afforded occupants of private residences, exigent circumstances justified the officers' warrantless entry. In *Schmerber v. California* (1966), 384 U.S. 757, 770–771, 86 S.Ct. 1826, 1835–1836, 16 L.Ed.2d 908, 919–920, the court held, in a related context, that the need to promptly secure a blood sample to determine alcohol content created an emergency situation where evidence may be destroyed. Dispensation of the warrant requirement was therefore permitted. *Id.* When confronted with allegations of an illegal entry similar to the case at bar, a New York appellate court reasoned that:

" * * * In order to get an accurate reading of defendant's blood alcohol level, it was essential that the test be administered as nearly as possible to the time she was operating the vehicle. * * * With the passage of time the body's natural processes were destroying the evidence of defendant's blood alcohol level. Further, once defendant had entered her residence she could have consumed additional alcohol, thus making the result of any subsequent test of dubious validity. * * * " (Citations omitted.) *People v. Odenweller* (1988), 137 A.D.2d 15, 17, 527 N.Y.S.2d 127, 129; see, also, *Stark v. New York State Dept. of Motor Vehicles* (1984), 104 A.D.2d 194, 195–198, 483 N.Y.S.2d 824, 826–827.

While apparently no Ohio courts have addressed this issue, jurists of other states have ruled similarly. *People v. Keltie* (1983), 148 Cal.App.3d 773, 779–780, 196 Cal.Rptr. 243, 247–248; *People v. Hampton* (1985), 164 Cal.App.3d 27, 31–34, 209 Cal.Rptr. 905, 908–910; *State v. Komoto* (1985), 40 Wash.App. 200, 212, 697 P.2d 1025, 1033; see, also, *Welsh v. Wisconsin* (1984), 466 U.S. 740, 763–764, 104 S.Ct. 2091, 2104–2105, 80 L.Ed.2d 732, 751–752 (White, J., dissenting).

The case cited by the majority, *Welsh,* is not factually controlling in this appeal. That decision concluded that the suspect's rapidly diminishing blood-alcohol content did not present an exigent circumstance since the jurisdiction

involved, Wisconsin, did not criminalize first-offense drunk-driving infractions. *Welsh, supra,* at 754, 104 S.Ct. at 2100, 80 L.Ed.2d at 745, and fn. 14. Contrary to the majority's suggestion, the Supreme Court expressly refused to draw a line between felonies and misdemeanors, noting instead "that it is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor." *Id.* at 753, 104 S.Ct. at 2099, 80 L.Ed.2d at 745. Certainly in this day and age, and in this state, we do not consider drunken driving—resulting in substantial property damage—to be an "extremely minor" offense. *Rouse, supra,* 53 Ohio App.3d at 51, 557 N.E.2d at 1230; accord *Hampton, supra,* 164 Cal.App.3d at 32–34, 209 Cal.Rptr. at 909–910; *Stark, supra,* 104 A.D.2d 194, 483 N.Y.S.2d at 826; *Welsh, supra,* 466 U.S. at 761–764, 104 S.Ct. at 2103–2105, 80 L.Ed.2d at 7 (White, J., dissenting).

At the moment of the arrest, the officers had probable cause to believe Tress had not only operated a motor vehicle while intoxicated, R.C. 4511.19(A)(1), but also failed to control his vehicle, R.C. 4511.202, engaged in disorderly conduct, R.C. 2917.11, recklessly operated the van, R.C. 4511.201, and refused to dutifully stop and report an accident, R.C. 4549.021 and 4509.74. The fact that Tress was not ultimately cited for these last two crimes is of no import. See, generally, *United States v. Clark* (C.A.5, 1977), 559 F.2d 420, 424–425, certiorari denied (1977), 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457. The arrest in this case was the product of an uninterrupted investigation that had focused upon Tress. At all times prior to the announcement of arrest, the officers acted peaceably and in accordance with law. The duration of the intrusion was, apparently, brief. Given these factors—the substantial evidence present at the time against Tress, and the seriousness of the offenses—the need to promptly secure a breath test created an exigent circumstance supported by more than sufficient probable cause.

I do agree with the majority's discussion of the conviction for driving while intoxicated. However, for the foregoing reasons, I would also affirm the conviction for resisting arrest.