This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant State of Ohio has appealed from an order of the Summit County Court of Common Pleas granting Appellee Clifford Cummings, Jr.'s motion to suppress evidence. This Court affirms.
 I
Officers Rodney Sherman and Howard Vaughn, Jr. of the Akron Police Department were dispatched to 1115 Peerless Avenue on a domestic disturbance call. When they arrived, the woman who had telephoned the police told the officers she was upset because her boyfriend, Carl Brumback, would not remove his possessions from her home. According to the woman, Brumback was at the house next door, and his automobile was in the neighbor's driveway. Although there was no allegation that Brumback had committed any crime, the officers decided to try to locate Brumback and resolve the situation.
After checking the vehicle and not finding Brumback inside, the officers knocked on the door of 1125 Peerless Avenue. Cummings, the appellee herein, asked from inside the home what the officers wanted. One of the officers responded that if Cummings would come to the door, they would explain the situation. Cummings then came to the door and partially opened it. The officers asked Cummings if Brumback was in the home, or if Cummings knew his whereabouts. Cummings responded that Brumback was not there, and that he had not seen Brumback.
As the officers spoke with Cummings, they detected an odor of marijuana coming from within the home. According to Officer Sherman, Officer Vaughn then said "Fine, if [Brumback] ain't here, but what about your weed?" At that point, Cummings tried to close the door, but was unable to do so because Officer Sherman's foot was between the door and the doorframe.[1]
Officer Sherman then tried to push the door back open, as Officer Vaughn went to call for backup units.
The officers finally got the door open and began wrestling with Cummings inside the home as they tried to place him under arrest. During the scuffle, the officers observed a marijuana blunt burning in an ashtray. Cummings continued to struggle as the officers took him outside and tried to subdue him. After several shots from a taser brought by one of the backup officers, Cummings was finally brought under control, handcuffed, and placed in a police wagon.
Officer Sherman then went back inside the home along with Detectives Shadie and Shaeffer, who had arrived on the scene as backup, to tag the marijuana that Officer Sherman had observed burning in the ashtray during the struggle. Inside the home, Detective Shaeffer observed a picture of a young girl on the wall. Detective Shaeffer then initiated a search of the rest of the house to look for the child, and anyone else who might be in the home.
In an upstairs bedroom, Detective Shaeffer found a gun "in plain view" next to a bed, which he unloaded for his safety. In a closet of another bedroom, he discovered a pile of what appeared to be marijuana drying on the floor. Detective Shaeffer then proceeded to the basement, where he found a number of marijuana plants. No one, including the girl in the picture, was found during the search.
Detective Shaeffer then contacted Narcotics Detective Malick, who, based on the contraband discovered by Detective Shaeffer, obtained a search warrant for the premises. Before the warrant had been secured, the I.D. Bureau was also summoned to the home, and took pictures of the scene.
Cummings was indicted for two counts of assault stemming from the altercation with the police officers, in violation of R.C. 2903.13(A); one count of resisting arrest, in violation of R.C. 2921.33(A); one count of illegal cultivation of marijuana, in violation of R.C. 2925.04(A); one count of possession of marijuana, in violation of R.C. 2925.11(A); and one count of obstructing official business, in violation of R.C.2921.31(A). Cummings entered a plea of not guilty to all counts, and filed a motion to suppress evidence. After a hearing, the trial court granted the motion to suppress the physical evidence seized from the home. The state has timely appealed from the order granting suppression, asserting one assignment of error.
 II Assignment of Error The trial court committed error suppressing the evidence in this case.
In its sole assignment of error, the state has argued that the trial court erred in granting Cummings' motion to suppress. Specifically, the state has contended that the officers did not violate Cummings'Fourth Amendment rights when they entered the home and that, once inside, the officers conducted a reasonable search for a child and for anyone else in the home who might threaten their safety while on the premises.
An appellate court reviews a trial court's decision on a motion to suppress de novo. State v. Bing (1999), 134 Ohio App.3d 444, 448, citingOrnelas v. United States (1996), 517 U.S. 690, 699, 116 S.Ct. 1657,1663, 134 L.Ed.2d 911, 920. However, the appellate court reviews the facts only for clear error, giving due weight to the trial court as to the inferences drawn from those facts. Id. Accordingly, this Court accepts the factual determinations of the trial court if they are supported by competent, credible evidence, and without deference to the trial court's conclusions will determine "whether, as a matter of law, the facts meet the appropriate legal standard." State v. Curry (1994),95 Ohio App.3d 93, 96.
The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. Section 14, Article I of the Ohio Constitution contains language nearly identical to that of the Fourth Amendment, and similarly prohibits unreasonable searches and seizures. See State v.Kinney (1998), 83 Ohio St.3d 85, 87, certiorari denied (1999),526 U.S. 1007, 119 S.Ct. 1148, 143 L.Ed.2d 214. Absent exigent circumstances, a warrantless search or seizure effected in a home is perse unreasonable. Katz v. United States (1967), 389 U.S. 347, 357,88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585; see, also, Payton v. New York
(1980), 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639, 653.
 A. Consent
The state has first challenged the trial court's finding that Cummings refused to allow the police to enter the home. One established exception to the Payton requirement that entry of a home requires a warrant or exigent circumstances is where the entry is pursuant to voluntary consent. Schneckloth v. Bustamonte (1973), 412 U.S. 218, 219,93 S.Ct. 2041, 2043, 36 L.Ed.2d 854, 858; State v. Thompson (1987), 33 Ohio St.3d 1,7. Whether consent was voluntarily given is a question of fact to be determined from the totality of the circumstances, and the government bears the burden of showing that consent was "freely and voluntarily" given by "clear and positive" evidence. State v. Robinette (1997),80 Ohio St.3d 324, 243; State v. Posey (1988), 40 Ohio St.3d 420, 427, certiorari denied (1989), 492 U.S. 907, 109 S.Ct. 3217, 106 L.Ed.2d 567. The Fourth Amendment confers the constitutional right to refuse to consent to warrantless entry, and the assertion of that right cannot be a crime. Camara v. Municipal Court (1967), 387 U.S. 523, 530-540,87 S.Ct. 1727, 1731-1737, 18 L.Ed.2d 930, 936-942.
Numerous Ohio courts have addressed the issue of what constitutes consent to police officers entering a home without a warrant. In Statev. Robinson (1995), 103 Ohio App.3d 490, appeal not allowed (1995),74 Ohio St.3d 1418, two police officers knocked on the defendant's door.Id. at 493. When the defendant opened the door, the officers noticed the smell of burning marijuana coming from inside. Id. As soon as the defendant realized they were police officers, he tried to close the door, but was prevented from doing so by a flashlight that one of the officers had inserted between the door and the doorframe. Id. The officers forced their way inside and found marijuana, which formed the basis for the charge of drug abuse subsequently brought against the defendant. Id. The court granted the defendant's motion to suppress, and the state appealed.
In upholding the order suppressing the marijuana as evidence, the First District Court of Appeals held:
 Robinson consented to the officers' initial breach of the threshold of his apartment. When Robinson opened the door * * *, he did so freely and voluntarily[.]
* * *
 The officers' progress into the apartment was not, however, made in conformity with the Fourth Amendment consent doctrine. Robinson communicated to the officers the limited scope of his consent to the initial intrusion when he attempted to bar the officers' entry into the apartment by closing the door, and the officers exceeded the scope of Robinson's voluntary consent when they forced their way over the threshold and into the apartment.
Id. at 495. See, also, State v. Scott (1999), 135 Ohio App.3d 253, 259, citing Robinson, supra ("The voluntary opening of a door does not constitute voluntary consent to enter over the threshold into the apartment."); Middleburg Heights v. Theiss (1985), 28 Ohio App.3d 1, 4
("[A]n individual can lawfully refuse to consent to a warrantless search. Further, * * * there exists at least some limited right to resist entrance, such as locking or closing the door or physically placing one's self in the officer's way."); Elyria v. Tress (1991), 73 Ohio App.3d 5,8-9 (reversing defendant's conviction because warrantless entry was unlawful, where police officers grabbed defendant's arm through the door that defendant was attempting to close, entered defendant's trailer, and arrested him); State v. Rowe (May 13, 1998), Summit App. No. 18720, unreported, at 4 (affirming trial court's order granting suppression of evidence because of police officer's warrantless, uninvited entry into the defendant's apartment); North Royalton v. Bramante (Apr. 29, 1999), Cuyahoga App. No. 74019, unreported, 1999 Ohio App. LEXIS 1949, at *12 (holding that where the defendant voluntarily opened his apartment door to police officers but did not try to close the door or otherwise bar their entry, the police officers' warrantless entry was unlawful and evidence seized from the apartment should have been suppressed).
In the instant case, the state failed to meet its burden at the suppression hearing of showing that Cummings consented to the police officers' entry into the home. Cummings has not contested that he consented to the officers' presence on his porch at the time of their initial conversation regarding Brumback, during which the officers detected the odor of marijuana. However, just as Cummings manifested his consent to the presence of the officers on the porch by opening the door and conversing with them, his attempt to close the door constituted a termination of the consensual encounter, and communicated his lack of consent to any further intrusion by the officers. See Robinson,103 Ohio App.3d at 495. The state has failed to show, therefore, that the officers' subsequent forcible entry into the home was pursuant to Cummings' consent.
 B. Exigent Circumstances
The state has next argued that the police officers' warrantless entry of Cummings' home was justified by the presence of exigent circumstances. This Court disagrees.
In the absence of consent, Payton clearly requires that exigent circumstances be present to justify a warrantless arrest inside the home: "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance of a house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Payton, 445 U.S. at 590.
Following Mincey v. Arizona (1978), 437 U.S. 385, 98 S.Ct. 2408,57 L.Ed.2d 290, this Court has recognized several exceptions to the warrant requirement that justify a police officer's warrantless entry of a home.State v. Bowe (1988), 52 Ohio App.3d 112, 113-14. The first exception is an "emergency situation," which arises when someone in the home is in need of "immediate aid" or there exists a situation "threatening life or limb." Id. at 113. The second exception is a search incident to a lawful arrest. Id. The third exception is when the police are in "hot pursuit" of a suspect who retreats into the confines of his home. Id. The fourth exception is for evidence that might easily be removed or destroyed if entry is delayed to obtain a warrant. Id. at 114.
In Bowe, this Court also identified six factors constituting exigent circumstances that would mandate a warrantless entry of a home:
 (1) [T]he offense involved is a crime of violence; (2) the suspect is reasonably believed to be armed; (3) a clear showing of probable cause to believe that the suspect committed the crime involved; (4) a strong reason to believe that the suspect is in the premises being entered; (5) the likelihood that the suspect will escape if not swiftly apprehended; and (6) the entry, though not consented, is made peaceably.
Bowe at 114. Because there was no evidence of violence or that the suspects were armed, and because the police had secured all exits from the home to prevent the suspects' escape, this Court in Bowe found that no exigent circumstances existed.[2] Id.
The state has argued that the officers were justified in entering Cummings' home to arrest him for assault of a police officer because the officers were in "hot pursuit" of Cummings after he slammed the door on Officer Sherman's foot. The essence of the "hot pursuit" exception is that "a suspect may not defeat an arrest which has been set in motion in a public place * * * by the expedient of escaping to a private place."United States v. Santana (1976), 427 U.S. 38, 43, 96 S.Ct. 2406, 2410,49 L.Ed.2d 300, 306; Cleveland v. Shields (1995), 105 Ohio App.3d 118,121-22, appeal not allowed (1995), 74 Ohio St.3d 1463.
In Santana, the United States Supreme Court upheld a warrantless entry and arrest where the police first approached the defendant as she stood in the open doorway of her home. Santana, 427 U.S. at 40. At the time, the defendant was holding a paper bag containing marked bills that had just been used in an undercover drug buy. Id. As the officers approached, shouting "police" and displaying their identification, the defendant retreated into her home. Id. The police followed through the open door and arrested her, and found the marked bills and more heroin on her person. Id. at 40-41. Applying the standard "expectation of privacy" analysis, the court held that, for Fourth Amendment purposes, the defendant was in a public place at the time she was standing in the doorway of her home. Id. at 42. Because the defendant was as exposed to public view, speech, hearing and touch as if she had been standing completely outside her home, the court found that the warrantless arrest was set in motion in a public place. Id.; see, also, United States v.Watson (1976), 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (holding that warrantless arrest in a public place upon probable cause does not violate the Fourth Amendment). Accordingly, the court found that the defendant could not elude an arrest that had been lawfully initiated in a public place by escaping to the confines of her home.
In the instant case, the state has argued that when the officers entered Cummings' home, they were in "hot pursuit" of him for assaulting a police officer. The state has asserted that Cummings' attempt to close the door while Officer Sherman's foot was between the door and the doorframe constitutes an assault, and that the officers forcibly entered the home in "hot pursuit" of Cummings for this offense. In support of this contention, the state has cited State v. Hagstrom (June 21, 1999), Butler App. No. CA 98-07-157, unreported, 1999 Ohio App. LEXIS 2851 (holding that the "hot pursuit" exception allowed police to pursue the defendant into his garage and his home to arrest him, after the defendant swung at a police officer while standing in his driveway).
Essential to the "hot pursuit" exception, as articulated in Santana and its progeny, is that the arrest be initiated in a public place. Santana,427 U.S. at 42; Shields, 105 Ohio App.3d at 121-22. The rationale behind the "hot pursuit" exception is that where a warrantless arrest is initiated in a public place upon probable cause, law enforcement officers can enter the arrestee's home in spite of the Payton rule, to prevent the defendant from evading the police by seeking refuge in his home. Where the arrestee is at all times within the confines of the home, however, the "hot pursuit" exception has no application:
 The reasoning behind the "hot pursuit" exception to the warrant requirement is that a person should not be able to avoid arrest simply by fleeing from a public place to a private place. This exception has no bearing on the present case, however, because the suspects were already in the house. The suspects did not flee inside from an outside location. A "hot pursuit" scenario simply does not exist when the suspect is already in a private dwelling.
(Citations omitted.) State v. Huff (June 10, 1999), Highland App. No. 98 CA 23, unreported, 1999 Ohio App. LEXIS 2907, at *15. In Huff, police officers did not initiate any arrests until after their warrantless entry of a home after observing, through an open window, what appeared to be several underage persons playing cards and drinking beer in a kitchen. See, also, State v. Howard (1991), 75 Ohio App.3d 760, 775:
 [T]he suspect's attempted arrest was not set in motion in a public place. * * * We find the fact that the officer was aware that the suspect was inside appellee's residence does not, standing alone, create suitable or sufficient basis for the application of the hot pursuit doctrine.
Likewise, in the case at bar, the arrest of Cummings was not initiated in a public place. The arrest was initiated only after Cummings attempted to close the door to his home, but was prevented from doing so by Officer Sherman's foot. Under the "expectation of privacy" analysis applied bySantana, neither Cummings nor his home was exposed to the public at the time he attempted to close the door. Cummings had terminated any consensual encounter with the officers, and the act of closing the door to his home constituted an assertion of his Fourth Amendment rights. Unlike the defendant in Santana and subsequent "hot pursuit" cases (including Hagstrom), therefore, Cummings was never in a public place, from which a retreat into his home would invoke the "hot pursuit" exception to the warrant requirement. Accordingly, the officers were not justified in entering Cummings' home without a warrant by the "hot pursuit" exception.
Because the police officers' initial entry of Cummings' home was unlawful, evidence thereafter obtained was properly suppressed as "derivative of an illegality, or `fruit of the poisonous tree.'" Statev. Carter (1994), 69 Ohio St.3d 57, 67, quoting Nardone v. United States
(1939), 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307, 312. Consequently, this Court need not address the parties' arguments concerning the propriety under the Fourth Amendment of the searches after Cummings had been subdued and arrested.
 III
The state's sole assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BETH WHITMORE, CARR, J. CONCURS IN JUDGMENT ONLY.
[1] The state has characterized Cummings' action as "slamming" the door on Officer Sherman's foot. It is undisputed that, whatever amount of force was applied, Officer Sherman's foot sustained no injuries as a result of Cummings' attempt to close the door.
[2] The state has not contended, at the suppression hearing or in its arguments to this Court, that any exigent circumstances except "hot pursuit" justified the officers' warrantless entry of Cummings' home. Moreover, the record in this case does not indicate the presence of any such exigent circumstances under the analysis set forth by this Court inBowe.