DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Clyde J. Foxx, appeals his convictions in the Hillsboro Municipal Court on two counts of permitting his cattle to run at large, misdemeanors of the fourth degree, in violation of R.C.951.02. Appellant contends that 1) the trial court erred in overruling his Crim.R. 29 motions for acquittal on both charges, in which he alleged that the state failed to introduce any evidence that the cattle were permitted to run at large on a public road, highway, street or alley or upon unenclosed land, or that he caused them to herded, kept, or detained for the purpose of grazing on *Page 2 
another's property; 2) the evidence presented to the court was insufficient as a matter of law to support the convictions against him; and 3) the court's verdicts finding him guilty of two counts of permitting cattle to run at large in violation of R.C. 951.02 were against the manifest weight of the evidence. Because we find that any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt and, further, that there is substantial evidence upon which the lower court concluded that all the elements of the offenses were proven beyond a reasonable doubt, we cannot conclude that the trial court erred in denying Appellant's motion for acquittal. Accordingly, we overrule each of Appellant's assigned errors and affirm the decision of the trial court.
 I. Facts {¶ 2} Appellant was convicted on two criminal counts of permitting his cattle to run at large, in violation of R.C. 951.02, misdemeanors of the fourth degree. These counts stemmed from two separate incidents, each involving different complainant neighbors. The first charge arose on July 25, 2004, when Appellant's neighbor Junior Turner contacted the Sheriffs department alleging that on July 20, 2004, Appellant had allowed his cattle to cross through the line fence separating their adjacent *Page 3 
properties and enter Mr. Turner's soy bean field.[1] The Sheriffs report indicates that Mr. Turner reported Appellant's cattle had been in his bean fields doing damage at least six different times that year. During the trial to the court, Mr. Turner testified that at some point he had a conversation with Appellant, at his place of employment, regarding the problems with the cattle getting into his bean fields, but that Appellant indicated that Mrs. Brown should fix her portion of the fence in order to keep the cattle out. Mr. Turner also testified that he checked, but could not find any other neighbors that had cattle.
 {¶ 3} The second charge arose on November 1, 2004, when another set of Appellant's neighbors, Rick and Candy Wright, filed a complaint with the Sheriffs department alleging that on October 24, 2004, Appellant had permitted his cattle to run at large on their property. The Sheriffs report created in response to that complaint indicates that the deputy was dispatched to take a report of cattle being on the roadway and in someone's yard. The report states that Rick Wright advised the deputy that the cattle belonged to Appellant, that the cattle are out very often, and that Appellant was at his [Wright's] residence just prior to the *Page 4 
deputy's arrival and that he stated he would try to get them [the cattle] back in.
 {¶ 4} During the trial to the court, Mr. Wright testified that he had spoken with Appellant regarding the problems with his cattle about four times and that Appellant and his wife, and on some occasions Appellant's son, would usually come over and claim the cattle. Mr. Wright specifically testified that on October 24, 2004, he observed about fifteen cows on his property. He testified that while he was not able to identify the cattle as belonging to Appellant, he is not aware of any other farmers in the area having cattle. He also testified that while Appellant did not claim the cattle the day the complaint was made, he and his wife observed the cattle running up and down the road after the Sheriff came out.
 {¶ 5} Mrs. Wright also testified at trial and stated that there were cows "all over" on the day the report was made and that might have been the day when the dogs ran the cattle off. While she couldn't remember the specific date of the event that was the subject of the charge, she testified that she had had conversations with Appellant regarding his cattle being on their property and that Appellant had come over several times and moved the cows off the property. *Page 5 
 {¶ 6} These matters were tried together to the court. At the close of the State's case, Appellant moved for acquittal pursuant to Crim.R. 29, contending that the State failed to present evidence as to whether the Turner's and Wright's properties were enclosed or unenclosed. Appellant argued those properties were, in fact, enclosed and as such, did not fit within R.C. 951.02. The trial court denied Appellant's motion and the defense rested without putting on any evidence.
 {¶ 7} On March 23, 2006, the trial court entered a written finding of guilt on both counts. Appellant was sentenced to thirty days in jail on each count, fines, three years of probation, and was also ordered to maintain enclosures of his pastures. The jail sentences were suspended and payment of the fines was stayed pending appeal. It is from this judgment that Appellant timely brings his appeal, assigning the following errors for our review.
 II. Assignments of Error {¶ 8} "I. THE TRIAL COURT ERED IN OVERRULING DEFENDANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIM.R. 29 ON BOTH CHARGES AS THE STATE FAILED TO INTRODUCE ANY EVIDENCE THAT THE CATTLE WERE PERMITTED TO RUN AT LARGE ON A PUBLIC ROAD, HIGHWAY, STREET OR ALLEY OR UPON UNENCLOSED LAND OR THAT THE DEFENDANT CAUSED THEM TO BE HERDED, KEPT, OR DETAINED FOR THE PURPOSE OF GRAZING ON ANOTHER'S PROPERTY. *Page 6 
 {¶ 9} II. THE EVIDENCE PRESENTED TO THE COURT WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT THE CONVICTIONS AGAINST CLYDE FOXX ON TWO COUNTS OF PERMITTING CATTLE TO RUN AT LARGE IN VIOLATION OF R.C. 951.02.
 {¶ 10} III. THE COURT'S VERDICTS FINDING CLYDE FOXX GUILTY OF TWO COUNTS OF PERMITTING CATTLE TO RUN AT LARGE IN VIOLATION OF ORC § 951.02 WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 III. Legal Analysis {¶ 11} In his first and second assignments of error, Appellant contends that the trial court erred in denying his Crim.R. 29 motions for acquittal, arguing that the evidence presented to the court was insufficient as a matter of law to support his convictions. Because resolution of both of these assigned errors involves a determination of the sufficiency of the evidence, we address them jointly. CrimR. 29(A) provides that
 "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 12} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 NE.2d 492, paragraph *Page 7 
two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia
(1979), 443 U.S. 307, 99 S.Ct. 2781.
 {¶ 13} Initially, we address Appellant's apparent misunderstanding of the distinction between the criminal and civil liability associated with a violation of this statute. In his brief, Appellant asserts that "[t]his is not a strict liability offense, as discussed above. The issue becomes one of negligence and comparative negligence as a result of the partition fence issue, which, as the Court noted, is the crux of this case."
 {¶ 14} R.C. 971.02 sets forth responsibilities of adjoining land owners whose land is separated by a partition fence. While we agree with Appellant that certain portions of the partition fence at issue may have been the responsibility of Mrs. Brown to maintain and repair from a civil standpoint, that fact does not shield Appellant from criminal liability for the escape of his cattle through a partition fence that is in disrepair, regardless of whose responsibility, civilly, it is to maintain or repair the fence. R.C. 971.02 is not applicable to the facts sub judice. *Page 8 
 {¶ 15} Appellant was convicted of two criminal counts[2] of permitting his cattle to run at large, in violation of R.C. 951.02, which provides as follows:
 "No person, who is the owner or keeper of horses, mules, cattle, sheep, goats, swine, or geese, shall permit them to run at large in the public road, highway, street, lane, or alley, or upon unenclosed land, or cause such animals to be herded, kept, or detained for the purpose of grazing on premises other than those owned or lawfully occupied by the owner or keeper of such animals.
 The running at large of any such animal in or upon any of the places mentioned in this section is prima-facie evidence that it is running at large in violation of this section."
Appellant contends that the standard of culpability for a violation of R.C. 951.02 is neither strict liability nor recklessness, but rather that liability should be determined under negligence principles, specifically, comparative negligence. Had this case been brought as a civil claim for damages, we would agree with Appellant's contention; however, because this case was filed as a criminal matter, we disagree.
 {¶ 16} R.C. 951.02 does not specifically state the standard of culpability to be used in order to determine if one has violated the statute. R.C. 2901.21 states, in pertinent part, that
 "(B) When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense." *Page 9 
In State v. Bauer, the Court reasoned that "[i]t has been held that, when a statute reads `no person shall * * *', without a reference to the requisite mental state, the statute is clearly indicative of a legislative intent to impose strict liability." (June 24, 1991), Defiance App. No. 4-90-12, 1991 WL 117273; citing State v. Cheraso
(1988), 43 Ohio App.3d 221, 540 N.E.2d 326, paragraph two of the syllabus. The Bauer court found such reasoning to be applicable to the facts before them, which also involved a criminal prosecution based upon a violation of R.C. 951.02.
 {¶ 17} The same reasoning was applied in State v. Sellars (April 21, 1999), Muskingham App. No. CT98-0034, 1999 WL 254464 on facts involving a horse that jumped over a fence and was struck by a vehicle after it wandered into the road. The Sellars court stated that "R.C. 951.02 has been found to impose strict liability in a criminal action brought pursuant to R.C. 951.99." Id.; relying on State v. Bauer, supra. Accordingly, the Sellars court held that the lower court "did not err in concluding that the statute imposed strict liability, and that once the State established a prima facie case pursuant to the statute, liability should be imposed pursuant to R.C. 951.99." *Page 10 
 {¶ 18} Here, Appellant contends that there was no testimony that the cattle were on unenclosed land, thereby preventing the State from establishing a prima facie case. In support of his assertion, Appellant asserts that his land was enclosed, albeit by a line fence in known disrepair. He also places much emphasis on the lack of testimony as to whether the Turner and Wright properties were enclosed; however, we find this fact to be irrelevant. We believe that the focus of the statute is upon the land of the cattle owner, not the land on which the cattle are ultimately found upon.
 {¶ 19} Appellant concedes that the line fence enclosing his property was known by him to be in disrepair by virtue of his argument to this court that Mrs. Brown, the adjoining land owner, was jointly responsible for repairing the partition fence. These facts, in combination with the unrebutted testimony of Mr. Turner and Mr. and Mrs. Wright that they know of no other neighbors that own cattle, establish a prima facie case that Appellant was, in fact, the owner of cattle which he permitted to run at large upon unenclosed land. As such, we conclude that after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable *Page 11 
doubt. As such, Appellant is strictly liable for the criminal violation of R.C. 951.02.[3]
 {¶ 20} Accordingly, we overrule Appellant's first and second assignments of error and affirm the trial court's denial of Appellant's motion for acquittal at the close of the State's case.
 {¶ 21} This, however, does not end our analysis. In his third assignment of error, Appellant contends that the trial court's verdict was against the manifest weight of the evidence. Although a verdict is supported by sufficient evidence, a court of appeals may nevertheless conclude that the verdict is against the manifest weight of the evidence. State v. Banks (1992), 78 Ohio App.3d 206, 214,604 N.E.2d 219. A sufficiency of the evidence challenge tests whether the state's case is legally adequate to go to a jury in that it contains prima facie evidence of all of the elements of the charged offense. State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717and Carter v.Estell (C.A. 5, 1982), 691 F.2d 777, 778. A weight of the evidence argument merely tests the rational adequacy, i.e., persuasiveness of the evidence. The two tests are distinct, notwithstanding dicta to the *Page 12 
contrary in State. v. Jenks, supra. See, also, State v. Thompkins
(1997), 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541 (Justice Cook, concurring).
 {¶ 22} A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. State v. Johnson (1991), 58 Ohio St.3d 40, 41, 567 N.E.2d 266;State v. Eckridge (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus. In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. Elyria v. Tress (1991), 73 Ohio App.3d 5,7, 595 N.E.2d 1031; citing State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E. 717; see, also, In the Matter of Wolfe (June 11, 1992), Pickaway App. No. 91CA21, 1992 WL 129314.
 {¶ 23} We conclude that the same facts that overcome a sufficiency of the evidence argument also overcome a manifest weight argument. Upon careful review of the evidence presented at trial, we hold that the trial court *Page 13 
did not act contrary to the manifest weight of the evidence in finding Appellant guilty of the charged offenses. We find substantial, competent, credible evidence upon which the trial court could base its decision that Appellant permitted his cattle to run at large upon unenclosed land.
 {¶ 24} In light of the foregoing, we cannot say that the trial court clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed. Therefore, we find that Appellant's convictions are not against the manifest weight of the evidence. Accordingly, we find that Appellant's third assignment of error is also without merit and affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 14 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hillsboro Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J.: Concurs in Judgment and Opinion.
Harsha, J.: Concurs in Judgment Only.
[1] Mr. Turner testified that he only farms the land at issue in this matter and that a Mrs. Betty Brown actually owns the land.
[2] R.C. 951.99 provides that "[w]hoever violates section 951.01 or951.02 of the Revised Code is guilty of a misdemeanor of the fourth degree.
[3] The trial court erroneously concluded that the standard of culpability for a violation of R.C. 951.02 was recklessness; however, we conclude that the language employed in the statute indicates a purpose to impose strict liability. Nevertheless, in view of the fact that strict liability is a lesser standard than that of recklessness, the trial court's error does not affect the validity of the conviction. The Supreme Court has consistently held that a reviewing court is not authorized to reverse a correct judgment simply because the trial court has stated an erroneous basis for the judgment. Myers v. Garson (1993),66 Ohio St.3d 610, 1993-Ohio-9, 614 N.E.2d 742; Joyce v. General MotorsCorp. (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172. *Page 1