The STATE of Ohio, Appellee,

v.

KARLE, Appellant.

[Cite as *State v. Karle* (2001), 144 Ohio App.3d 125.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–000340, C–000341 and C–000342.

Decided June 1, 2001.

*Michael K. Allen,* Hamilton County Prosecuting Attorney, *Emma Poiry,* Assistant Prosecuting Attorney, and *Rebecca L. Collins,* Legal Intern, for appellee.

*Derek W. Gustafson,* for appellant.

---

GORMAN, Presiding Judge.

In these consolidated appeals, defendant-appellant James Karle challenges his convictions, following a bench trial in the Hamilton County Municipal Court, for failure to comply with an order or signal of a police officer at the scene of a potentially violent traffic altercation, and for disorderly conduct and resisting arrest when other officers later entered his home without a warrant to arrest him for the failure-to-comply offense. Since the Fourth Amendment prohibits the police from making a warrantless, nonconsensual entry into a suspect's home simply to make a routine arrest, Karle's convictions for resisting arrest and disorderly conduct must be reversed.

On August 8, 1999, Green Township Police Officer Cindy Tate was on duty on Bridgetown Road, when a young woman yelled for help and approached her cruiser. The woman stated that an irate driver in the car in front of her was

threatening to back up and hit her vehicle. She pointed out Karle to Officer Tate, who then pulled alongside of Karle's car and asked to speak with him. Karle responded by complaining about the occupants of the car behind him, stating, "I'm having a bad fucking day and these bitches are pissing me off." Officer Tate then asked for Karle's driver's license. Karle mistakenly handed Officer Tate a credit card, took it back, and then threw his driver's license at Officer Tate. Officer Tate requested that Karle pull his car into an adjacent parking lot so that she could speak to him to ascertain what had happened. Karle refused. Officer Tate repeated her request. Karle again refused. Officer Tate asked a third time and then ordered Karle to "do it or you're going to jail." Karle refused for the final time and drove away without retrieving his driver's license. Officer Tate then broadcast Karle's home address and requested officers in the area to stop Karle and return him to the scene.

Hamilton County Deputy Sheriff Dennis Caskey and Green Township Police Officer Tom Icenogle responded to Officer Tate's broadcast. Deputy Caskey stated that he received a broadcast indicating that Karle "had left the scene of an unknown type of trouble, an altercation." He responded to Karle's residence "at the request of Officer Tate to have him arrested and returned to the scene." Deputy Caskey arrived at Karle's home, with Officer Icenogle just behind him. Karle was already there. Deputy Caskey knocked on Karle's front door, but no one answered. Officer Icenogle looked around the corner of the house, where he found Karle. Karle asked Officer Icenogle, "Do you have my fucking license?" Officer Icenogle attempted to explain that Officer Tate still had his license and that she wanted him to return to the scene of the incident. Karle interrupted Officer Icenogle and ordered him off the property, stating, "If you don't have my fucking license, get the fuck off my property." Officer Icenogle responded, "Sir, you're under arrest for failure to comply with an officer."

Officer Icenogle then attempted to handcuff Karle. Karle was gripping some pencils in his hand and did not initially release them from his grasp. Deputy Caskey came around the corner, observed Officer Icenogle having difficulty handcuffing Karle, and came to his assistance. Deputy Caskey and Officer Icenogle both testified that Karle stiffened up and resisted when they were handcuffing him and when they were attempting to walk him to the police cruiser. In addition to Officer Tate's charge of failure to comply, Karle was charged with resisting arrest by Officer Icenogle, and with disorderly conduct by Deputy Caskey. Following a bench trial, Karle was convicted of each charge.

## The Motion to Suppress

In his first assignment of error, Karle contends that the trial court erred in denying his motion to suppress. He claims that as Officer Tate had observed no

violation of law, she did not have probable cause to arrest him, and thus her attempt to detain him violated the Fourth Amendment. Karle argued at the hearing below that he sought the suppression of all the "testimony" gained by the state after he had refused to speak with Officer Tate.[1]

There is little dispute over the historical facts developed at the suppression hearing. Officer Tate received an urgent plea from a citizen, delivered in person, to investigate unruly and potentially violent behavior by a motorist stopped in traffic. She confronted Karle and asked him several times to identify himself and to pull out of traffic so that she could determine what was happening. Karle's own statements and belligerent attitude lent credence to the citizen's complaint. Despite Officer Tate's order, Karle left the scene and returned to his home. Officer Tate broadcast Karle's home address. In response, two officers entered Karle's property to arrest him without a warrant. They confronted him, ignored his instructions to leave, and arrested him.

From these facts, the trial court concluded that Officer Tate had sufficient reasonable and articulable suspicion to believe that a crime had been committed or was about to be committed, thereby justifying a brief detention of Karle while she investigated the situation. See *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

The trial court further concluded that "[t]he failure to comply with [Officer Tate's] order, as far as the original detention, did give authority to—to go to the—Mr. Karle's house and his failure to comply did give them reasonable cause to make that arrest, when he refused to come back or follow that order." On these grounds, the trial court denied the motion to suppress.

Accepting the historical facts as true, this court must make an independent determination as a matter of law, without deference to the legal conclusions of the trial court, if the facts demonstrate compliance with the applicable constitutional standard. See *State v. Deters* (1998), 128 Ohio App.3d 329, 714 N.E.2d 972; see, also, *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911. Here, that determination is twofold: whether Karle's detention by Officer Tate was constitutionally justified, see *Terry v. Ohio,* and whether the ensuing warrantless arrest of Karle at his home was similarly justified. See *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639; see, also, *State v. Petrosky* (Mar. 27, 1991), Hamilton App. Nos. C–900264 and C–900265, unreported, 1991 WL 40550.

---

1. It is unclear what evidence Karle sought to have suppressed. The trial court repeatedly inquired as to the goals of the motion. There was no physical evidence gained from either Officer Tate's traffic stop or the warrantless arrest at Karle's home. The only statements made by Karle at his home, offered by the police officers at the hearing, reflected his attempts to have them leave his home.

■ The trial court correctly determined that the initial detention was justified. From the evidence offered at the suppression hearing, it is beyond doubt that Officer Tate had a reasonable and articulable suspicion that Karle might have committed, or have been about to commit, a violent act. Her brief detention of him while she questioned his identity and attempted to determine what had happened and to defuse the potentially violent situation was constitutionally legitimate. See *Terry v. Ohio*.

As to the second determination, a more detailed analysis is required. The state had the burden below to establish the propriety of the warrantless seizure and arrest of Karle at his home. See *Welsh v. Wisconsin* (1984), 466 U.S. 740, 749–750, 104 S.Ct. 2091, 2097–2098, 80 L.Ed.2d 732, 742–744; see, also, *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889. The state argues that Officer Icenogle and Deputy Caskey had legal authority to arrest Karle, because Officer Tate had probable cause to believe that Karle had failed to comply with her lawful order or signal, in violation of R.C. 2921.331. Failure to comply can be punishable as a third-degree felony, a fourth-degree felony, or, as here, a misdemeanor of the first degree. See R.C. 2921.331(C). The state maintains that the substance of Officer Tate's radio broadcast gave Officer Icenogle and Deputy Caskey "reasonable grounds" to believe that Karle had committed the felony of failure to comply. Thus, the state concludes, the officers had probable cause to make a lawful arrest pursuant to R.C. 2935.03(A), which permits the arrest of persons "found violating * * * a law of this state * * *."

Karle disputes the state's characterization of the offense committed in Officer Tate's presence as a felony offense. Karle claims that the found-violating provision of R.C. 2935.03(A) has a limited application where less serious, or misdemeanor, offenses are concerned. In light of the recent decision by the United States Supreme Court in *Atwater v. Lago Vista* (2001), 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549, released after this case was argued, these are distinctions without a difference. In *Atwater*, the court held that an officer does not violate the federal Constitution when arresting an individual who has committed even a very minor criminal offense in his presence, as long as the officer has probable cause to believe that an offense has been committed.[2]

### Arrest in the Home

The existence of probable cause to arrest Karle and the general constitutional power of an officer to arrest for even minor offenses is only the beginning, not the conclusion, of the analysis. The warrantless arrest of Karle occurred at his

---

**2.** The Ohio General Assembly, however, has created a substantive state right to be free from arrest for the commission of a minor misdemeanor. See R.C. 2935.26.

home: it was a seizure " 'conducted in an extraordinary manner, unusually harmful to [an individual's] privacy.' " *Atwater v. Lago Vista* at ——, 121 S.Ct. at 1557, 149 L.Ed.2d at 576, quoting *Whren v. United States* (1996), 517 U.S. 806, 818, 116 S.Ct. 1769, 1776, 135 L.Ed.2d 89, 100–101. This court has long recognized and vigorously defended the sanctity of the home against extraordinary, warrantless intrusion by the police. See, *e.g., State v. Lett* (1961), 114 Ohio App. 414, 178 N.E.2d 96; *State v. Leubbers* (June 10, 1981), Hamilton App. No. C–800406, unreported, 1981 WL 9838; *State v. Jenkins* (1995), 104 Ohio App.3d 265, 268, 661 N.E.2d 806, 808; *State v. Hatcher* (Sept. 3, 1999), Hamilton App. No. C–980938, unreported, 1999 WL 682630.

■■■ Generally, the Fourth Amendment prohibits the police from making a warrantless, nonconsensual entry into a suspect's home simply to make a routine arrest. See *Payton v. New York*, 445 U.S. at 586, 100 S.Ct. at 1380, 63 L.Ed.2d at 650–651; see, also, *Illinois v. McArthur* (2001), 531 U.S. 326, 331–332, 121 S.Ct. 946, 950, 148 L.Ed.2d 838, 847–848. Although the seizure of Karle occurred immediately outside his house, and not inside it, certain lands "immediately surrounding the home"—the curtilage—are areas falling within the protections of the Fourth Amendment. See *Oliver v. United States* (1984), 466 U.S. 170, 178, 104 S.Ct. 1735, 1741, 80 L.Ed.2d 214, 223–224; see, also, *Illinois v. McArthur; State v. McGrady* (Apr. 21, 2000), Hamilton App. No. C–990229, unreported, 2000 WL 429611 "[C]urtilage questions should be resolved with particular reference to [*inter alia*] the proximity of the area claimed to be curtilage to the home." *United States v. Dunn* (1984), 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326, 334–335.

■■■ A "specifically established and well-delineated exception" to the warrant requirement permits warrantless arrests in the home or curtilage if both probable cause to arrest and exigent circumstances are present. *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507; 514, 19 L.Ed.2d 576, 585; see *Payton v. New York*, 445 U.S. at 590, 100 S.Ct. at 1382, 63 L.Ed.2d at 653; see, also, *Steagald v. United States* (1981), 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38; *State v. Jenkins*, 104 Ohio App.3d at 268, 661 N.E.2d at 808. An exigent circumstance is one that prompts police officers to believe either that a person in the home is in need of immediate aid to prevent a threat to life or limb, or that immediate entry is necessary to stop the imminent loss, removal, or destruction of evidence or contraband. See *Minnesota v. Olson* (1990), 495 U.S. 91, 101, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85, 96; see, *e.g., State v. Robinson* (1995), 103 Ohio App.3d 490, 497, 659 N.E.2d 1292, 1296–1297; *State v. Jenkins*, 104 Ohio App.3d at 268, 661 N.E.2d at 808, fn. 5 (citing examples of exigent circumstances).

■ Furthermore, the warrantless entry must be strictly circumscribed by the exigencies that justify it. See *State v. Applegate* (1994), 68 Ohio St.3d 348, 350, 626 N.E.2d 942, 944, citing *Terry v. Ohio*, 392 U.S. at 26, 88 S.Ct. at 1882, 20 L.Ed.2d at 908–909. In recently affirming the constitutional propriety of a brief seizure of a defendant outside his house while a warrant was obtained, the United States Supreme Court explained that the police (1) had probable cause to believe that the home contained drugs, (2) had reason to fear their destruction if the defendant entered alone, (3) detained the defendant for only a limited period, and (4) "made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy. They neither searched the trailer nor arrested [the defendant] before obtaining a warrant." *Illinois v. McArthur*, 531 U.S. at 332, 121 S.Ct. at 950–951, 148 L.Ed.2d at 848.

■ Here, Officer Icenogle and Deputy Caskey, acting with probable cause, went to Karle's house for the express purpose of arresting him. They did not have a warrant. The state did not advance any exigent circumstances justifying the officers' entry, and none are demonstrated in the record. The officers were not in hot pursuit of Karle, as they had not engaged in an immediate and continuous pursuit from the moment probable cause to arrest had arisen for Officer Tate. See, *e.g.*, *State v. Rouse* (1988), 53 Ohio App.3d 48, 51, 557 N.E.2d 1227, 1230. There was no risk of the destruction of evidence and no hint that a life-threatening emergency was taking place behind Karle's door. See, *e.g.*, *State v. Jenkins*, 104 Ohio App.3d at 268, 661 N.E.2d at 808, fn. 5. As in *Jenkins* and *McArthur*, and as required by the found-violating statute[3] that the state relies upon, the officers could have made reasonable efforts to reconcile their law enforcement needs and secured the location to prevent Karle's departure while they obtained an arrest warrant. See *State v. Jenkins*, 104 Ohio App.3d at 271–272, 661 N.E.2d at 810; *Illinois v. McArthur*, 531 U.S. at 331–334, 121 S.Ct. at 950–951, 148 L.Ed.2d at 847–849; and R.C. 2935.03(A). They did not. The officers, therefore, violated the Fourth Amendment proscription against warrantless arrests in the home. The trial court erred only in its legal conclusion that Officer Icenogle and Deputy Caskey had "reasonable grounds" to proceed to Karle's home and to arrest him without a warrant.

### Prejudice Arising From the Seizure

■ As this court has held, "[a]n arrest in contravention of the Fourth Amendment will not *a fortiori* preclude subsequent criminal proceedings predicated upon the arrest." *State v. Askren* (May 26, 2000), Hamilton App. Nos. C-

---

3. R.C. 2935.03(A) provides that a police officer "shall arrest and detain, *until a warrant can be obtained,* a person found violating * * * a law of this state * * *." (Emphasis added.)

990535 and C–990536, unreported, 2000 WL 682563, citing *United States v. Crews* (1980), 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537, 547–548. Rather, the exclusionary rule provides only that evidence derived from an illegal seizure—fruit of the poisonous tree—is subject to exclusion at trial. See *Mapp v. Ohio* (1961), 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1089–1090; see, also, *Nardone v. United States* (1939), 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307, 311–312.

 In this case, review of the record for evidence that might constitute fruit of the poisonous tree fails to show any inculpatory "testimony" obtained as a result of the unlawful arrest. The only testimony "seized" was Karle's order to the officers to leave his property. We hold that there was no prejudice to Karle resulting from the trial court's denial of the motion to suppress. See *State v. Hablutzel* (Nov. 23, 1988), Hamilton App. Nos. C–870789, C–870790 and C–870791, unreported, 1988 WL 125019; see, also, *State v. Petrosky*. The first assignment of error is overruled.

### Sufficiency–of–the–Evidence Assignments of Error

 In three assignments of error, Karle challenges the sufficiency of the evidence adduced at trial to support his convictions for resisting arrest, disorderly conduct, and failure to comply. To reverse a conviction for insufficient evidence, a reviewing court must be persuaded, after viewing the evidence in a light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. See *State v. Waddy* (1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819, 825, certiorari denied (1992), 506 U.S. 921, 113 S.Ct. 338, 121 L.Ed.2d 255; see, also, *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573–574.

### No Evidence of a Lawful Arrest

 In his third assignment of error, Karle challenges the sufficiency of the evidence supporting his conviction for resisting arrest. A lawful arrest is an essential element of resisting arrest. See R.C. 2921.33(A); see, also, *State v. Thompson* (1996), 116 Ohio App.3d 740, 689 N.E.2d 86; *Elyria v. Tress* (1991), 73 Ohio App.3d 5, 595 N.E.2d 1031. In the resolution of the first assignment of error, we have held that the officers made a constitutionally infirm arrest of Karle at his home. Because Karle's arrest violated the Fourth Amendment, it was an unlawful arrest. As no rational trier of fact could have found the essential element of a lawful arrest proven beyond a reasonable doubt, the conviction for resisting arrest must be reversed. See *State v. Waddy*. Therefore, the third assignment of error is well taken.

### No Evidence of Threatening or Turbulent Behavior

In Karle's fourth assignment of error, he challenges the sufficiency of evidence to support the disorderly conduct conviction. Disorderly conduct is defined, in these circumstances, as follows: "No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following: [e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior." R.C. 2917.11(A)(1). The pertinent question in this case is "whether, under the circumstances, it is probable that a reasonable police officer would [have found] the accused's language and conduct annoying or alarming and would [have been] provoked to respond violently." *State v. Sansalone* (1991), 71 Ohio App.3d 284, 285, 593 N.E.2d 390, 391–392. Although Karle used language that would be considered offensive to most in ordering Deputy Caskey and Officer Icenogle off his property, absent fighting words foul language alone does not give rise to disorderly conduct. *Id.* Karle had two or three pencils grasped in his hand as he was being arrested, but the evidence does not suggest that he used them in a threatening or aggressive manner. There is no evidence that Karle behaved in a manner that would have provoked a violent response from the officers. Consequently, there is no proof of threatening or turbulent behavior—an essential element of the offense of disorderly conduct. See *State v. Waddy.* Karle's fourth assignment of error is also well taken.

### Evidence of Failure to Comply

In his second assignment of error, Karle challenges the sufficiency of the evidence supporting the failure-to-comply conviction. R.C. 2921.331 provides that "[n]o person shall fail to comply with any lawful order or direction of any police officer invested with authority to direct, control, or regulate traffic." Karle does not dispute that he failed to comply with Officer Tate's order. Rather, he challenges the legality of the order itself.

It is frivolous to argue that Officer Tate's order was not a lawful order. As part of the investigation of a citizen's complaint, it was reasonable for Officer Tate to stop·Karle and to inquire about the potentially violent situation. See *Terry v. Ohio.* Karle's repeated refusal to pull over violated Officer Tate's order.

After viewing the evidence in the light most favorable to the state, we overrule the assignment of error, as the record contains substantial, probative evidence from which the trial court could have reasonably concluded that all elements of the charged crime had been proven beyond a reasonable doubt. See *State v. Waddy;* see, also, *State v. Walton* (Feb. 11, 2000), Hamilton App. No. C–990374, unreported, 2000 WL 145326. The second assignment of error is overruled.

Therefore, in the appeal numbered C–000340, the judgment of the trial court convicting Karle of failure to comply and imposing a $100 fine plus costs is

affirmed. But, in the appeals numbered C–000341 and C–000342, the judgments convicting Karle of resisting arrest and disorderly conduct are reversed, and Karle is discharged from further prosecution for these offenses.

*Judgment accordingly.*

SUNDERMANN and WINKLER, JJ., concur.