*95 DAVID T. PROSSER, J.
¶ 53. (concurring). The majority opinion concludes that "the parking garage underneath this apartment building does not constitute curtilage of Dumstrey's home." Majority op., ¶ 4. I join the majority opinion in this conclusion and agree with its analysis in reaching it. In my view, the opinion does not preclude a different conclusion if there were materially different facts.
¶ 54. The majority opinion also concludes that "Dumstrey has shown no reasonable expectation of privacy" in this parking garage. Id. I also join the majority opinion in this conclusion.
¶ 55. I write separately because the opinion states the central question to be "whether the parking garage underneath the apartment building constitutes curtilage of Dumstrey's home such that it is protected by the Fourth Amendment." Id., ¶ 3 (emphasis added). Implicit in this question is the principle that police may not arrest a person on probable cause if the person is found within the curtilage of the person's home unless the police have an arrest warrant or there is a well-recognized exception to the warrant requirement such as exigent circumstances. I do not agree with a broad principle that police may not arrest a person on probable cause when the person is within the person's own curtilage but not within the home. In my view, a broad principle to this effect would constitute a serious mistake of law and an impractical hardship for law enforcement.
¶ 56. "[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." Elkins v. United States, 364 U.S. 206, 222 (1960). As the majority recognizes, "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are pre *96 sumptively unreasonable." Majority op., ¶ 22 (quoting Payton v. New York, 445 U.S. 573, 586 (1980)). "It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" Welsh v. Wisconsin, 466 U.S. 740, 748 (1984) (quoting United States v. United States District Court, 407 U.S. 297, 313 (1972)).
¶ 57. In State v. Walker, 154 Wis. 2d 158, 453 N.W.2d 127 (1990), our court extended the Fourth Amendment's protection against unreasonable seizures to curtilage:
In deciding whether Walker's arrest was lawful, we begin by examining the nature of the protection that the fourth amendment provides to the home and the land next to the home. In Payton v. New York, 445 U.S. 573 (1980), the United States Supreme Court held that the fourth amendment, made applicable to the states by the fourteenth amendment, prohibits police from making a warrantless and nonconsensual entry into a felony suspect's home to arrest the suspect, absent probable cause and exigent circumstances. The Court has also determined that the fourth amendment protections that attach to the home likewise attach to the curtilage, which is defined generally as "the land immediately surrounding and associated with the home." Oliver v. United States, 466 U.S. 170, 180 (1984). In Oliver, the Court reasoned that the curtilage receives the fourth amendment protections that attach to the home because, "[a]t common law, the curtilage is the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" Id. (quoting Boyd v. United States, 116 U.S. 616, 630 (1886)).
Read together, Payton and Oliver require that police obtain a warrant before entering either the home or its curtilage to make an arrest absent probable cause and exigent circumstances. Under Payton *97 and Oliver, therefore, absent probable cause and exigent circumstances, Walker's warrantless arrest, although not occurring in his home, was unlawful if his fenced-in backyard falls within the curtilage of his home.
Walker, 154 Wis. 2d at 182-83 (footnote omitted).
¶ 58. In my view, the Walker opinion took considerable liberty with Oliver, which was a search case involving open fields, and was striving to distinguish open fields from curtilage. The Oliver Court noted that "the common law implies, as we reaffirm today, that no expectation of privacy legitimately attaches to open fields." Oliver, 466 U.S. at 180.
¶ 59. Surely, no expectation of privacy legitimately attaches to a person's driveway or front yard, or even a backyard without special fencing, that is completely open to public view. "[T]he warrantless arrest of an individual in a public place upon probable cause [does] not violate the Fourth Amendment," and "[w]hat a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection." United States v. Santana, 427 U.S. 38, 42 (1976) (first citing United States v. Watson, 423 U.S. 411 (1976); then quoting Katz v. United States, 389 U.S. 347, 351 (1967)).
¶ 60. Even the Walker court, in distinguishing Santana, recognized that police might make an arrest on curtilage if the curtilage is open to public view:
The threshold of one's house is a place [,] although on private property, that is used by various members of the public and is visible to any person that passes by the house. A fenced-in backyard, on the other hand, is not an area accessible to the public, and one is normally not visible to those passing by the front of the house.
*98 Walker, 154 Wis. 2d at 184 n.16. Consequently, the law of arrest may well be different from the law of search in relation to curtilage.
¶ 61. The Wayne LaFave treatise on search and seizure discusses curtilage arrests in a section entitled "Basis for Entry to Arrest":
The cases involving arrests made on the premises (in the broad sense of that term) outside rather than inside the threshold deserve some attention at this point, for quite similar considerations govern there. Typically by reliance upon the Payton declaration that ordinarily the "threshold may not reasonably be crossed without a warrant," the courts have upheld warrantless arrests made in such places as the common hallway of an apartment building, or the yard%rl91%r driveway,%rl92%r or porch%rl93%r or carport%rl94%r of a house. (There are conceivably special circumstances, however, in which some such place would carry with it such a high expectation of privacy that the Payton rule should govern.)
3 Wayne R. LaFave, Search & Seizure § 6.1(e), at 405-06 (5th ed. 2012) (footnotes omitted).
¶ 62. Footnotes 191-194 list multiple cases. Footnote 191 reads in part: "Contra: State v. Walker, 154 Wis. 2d 158, 453 N.W.2d 127 (1990)" and quotes a sentence from Walker.
¶ 63. In a later supplement to footnote 191, La-Fave states:
Walker does not stand alone, as there is other authority to the effect that the on-curtilage lawful arrest limitations are just as stringent as those applicable to in-premises arrest. See note 57 supra. But, while the in-premises analogy arguably makes sense when the arrest occurs upon a part of the curtilage not open to visitors generally, e.g., the back yard in Walker, it *99 hardly follows that the same should be true regarding the arrest of someone who, e.g., steps out onto his front porch at police request and then is apprehended there.
3 LaFave § 6.1(e) n.191, at 52 (Supp. 2015).
¶ 64. The majority opinion cites six cases for the proposition that the Fourth Amendment prohibits entry onto curtilage for the purpose of making a warrant-less arrest: United States v. Struckman, 603 F.3d 731, 739 (9th Cir. 2010); United States v. Brown, 510 F.3d 57, 64 (1st Cir. 2007); State v. Lewis, 675 N.W.2d 516, 523-26 (Iowa 2004); State v. Karle, 759 N.E.2d 815, 819-20 (Ohio Ct. App. 2001); Jefferson v. Commonwealth, 497 S.E.2d 474, 480-81 (Va. Ct. App. 1998); and State v. Mierz, 866 P.2d 65, 70-71 (Wash. Ct. App. 1994). Additional cases may be cited. See 3 LaFave § 6.1(b) n.57, at 50 (Supp. 2015).
¶ 65. The ambiguity in some of these cases requires comment. Despite making broad statements regarding Fourth Amendment protections on curtilage, these courts have hesitated to foreclose all arrests on curtilage that is open to public view. For example, in the Brown case, the court dutifully observed:
The Fourth Amendment protects persons from warrantless arrest inside their homes or other places where they have a reasonable expectation of privacy. One such place is the curtilage of the home. Bilida v. McCleod, 211 F.3d 166, 171 (1st Cir. 2000). Brown argues that he was standing in the curtilage of his home when he was arrested, and since the police lacked a warrant, the arrest violated the Fourth Amendment.
Brown, 510 F.3d at 64 (citations omitted).
*100 ¶ 66. However, Brown was standing in his driveway, and the court concluded that the driveway adjacent to his garage next to his trailer home was not part of the home's curtilage: "[0]ur past cases reveal a number of general principles with respect to driveways. If the relevant part of the driveway is freely exposed to public view, it does not fall within the curtilage." Id. at 65.
¶ 67. In the Lewis case from Iowa, the court stated that "[t]he protection provided by the Fourth Amendment has been extended to the curtilage." Lewis, 675 N.W.2d at 523. However, concerning the driveway adjacent to Lewis's home, "[W]e find the driveway was not within the curtilage." Id.
¶ 68. In the Karle case, the Ohio Court of Appeals found an arrest of the defendant "immediately outside his house" unlawful because the police did not have an arrest warrant. Karle, 759 N.E.2d at 820. However, the court was quick to add:
As this court has held, "[a]n arrest in contravention of the Fourth Amendment will not a fortiori preclude subsequent criminal proceedings predicated upon the arrest. Rather, the exclusionary rule provides only that evidence derived from an illegal seizure— fruit of the poisonous tree — is subject to exclusion at trial.
Id. at 821 (citation omitted).
¶ 69. In State v. Mierz, from Washington, the court determined that there was an unlawful arrest in defendant's backyard that "was clearly not open to public use." Mierz, 866 P.2d at 71. However, the court stated that "the police may enter areas of the curtilage that are impliedly open," and it cited a Washington Supreme Court decision, State v. Solberg, 861 P.2d 460 *101 (Wash. 1993), in which the court "upheld a warrantless arrest on a front porch of a home." Mierz, 866 P.2d at 71 & n.7.
¶ 70. This concurrence does not attempt to be a comprehensive exegesis of the subject of warrantless arrest on a defendant's curtilage. It is, however, intended to suggest that the language in the Walker case is too broad and that some courts that "talk the talk" do not "walk the walk" because walking the walk would make little sense in light of other United States Supreme Court precedent.[1] When the Payton rule is followed, the law is clear. When the Payton rule is extended to curtilage, the law will be open to constant dispute.
¶ 71. I am authorized to state that Justice MICHAEL J. GABLEMAN joins this concurrence.

 One post-2009 unpublished case by the Wisconsin court of appeals, citable for persuasive purposes, seems to limit Walker. In State v. Wieczorek, No. 2011AP1184-CR, unpublished slip op. (Wis. Ct. App. Nov. 8, 2011), an officer responded to a driver's home after receiving a dispatch regarding a hit and run. Wieczorek, unpublished slip op., ¶¶ 3-5. After knocking on the front door and engaging with the suspected drunk driver, the officer arrested the suspect on the suspect's porch. Id., ¶ 6. The circuit court concluded that the officer unconstitutionally seized the driver "because the seizure took place in the curtilage of his home," id., ¶ 8, but the court of appeals reversed, reasoning that the circuit court "erred by determining by reason of analogy that [the driver] had the same reasonable expectation of privacy in his front porch as the defendant in Walker had in his fenced-in backyard," id., ¶ 12. Rather than treating Walker as creating a per se rule prohibiting arrest on curtilage, the Wieczorek court preferred a case-by-case analysis of the privacy interests that would support or prohibit an arrest. Id., ¶¶ 11 — 12.