[Cite as *State v. Thomas*, 2018-Ohio-758.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 16AP-852 |
| v. | : | (C.P.C. No. 16CR-3963) |
| Titus Thomas, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on March 1, 2018

**On brief:** *Ron O'Brien,* Prosecuting Attorney, *Steven L. Taylor* and *Seth L. Gilbert,* for appellant.

**On brief:** *Yeura R. Venters,* Public Defender, and *Timothy E. Pierce,* for appellee.

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Plaintiff-appellant, the State of Ohio, appeals from a judgment of the Franklin County Court of Common Pleas in which the trial court granted the motion to suppress of defendant-appellee, Titus Thomas. For the following reasons, we affirm the judgment.

## I. Facts and Procedural History

{¶ 2} Thomas was indicted on one count of carrying a concealed weapon, a violation of R.C. 2923.12, and one count of having a weapon while under a disability, a violation of R.C. 2923.13, for an offense alleged to have occurred on or about July 12, 2016. (July 22, 2016 Indictment.) Thomas filed a motion to suppress the evidence that the state intended to introduce as evidence to prove its case, alleging it constituted fruits of an unconstitutional search and seizure. (Sept. 19, 2016 Mot. to Suppress.)

{¶ 3}    The trial court held an evidentiary hearing on the motion on December 6, 2016.  At the hearing, the state called Columbus Police Officer Joseph Houseberg as the first witness.  Officer Houseberg testified that he has been a patrol officer for nine years and was on patrol with his partner, Officer Brumfield, on July 12, 2016, at approximately 6:00 p.m.  They were in a marked cruiser travelling eastbound on Hildreth Avenue when they saw Thomas walking eastbound on the north side of the street.  Both officers noticed a single firearm magazine attached to his belt on his left hip.  Officer Houseberg stated that he saw Thomas look back towards the cruiser and then move his shirt so it covered the magazine.  The officers stopped the cruiser in front of 1436 Hildreth Avenue and saw Thomas turn to go up the stairs to the house.  When Thomas "turned, his right side, his shirt kind of pressed against his right side and gave a textbook outline of a - - of a firearm." (Tr. at 12.)    Officer Houseberg testified he is very familiar with a firearm concealed in that manner. (Tr. at 13-14.)

{¶ 4}    Officer Brumfield asked Thomas whether he had a permit for the gun and Thomas replied, "what gun and went up the stairs and into the house immediately." (Tr. at 12.)  The officers requested backup help and exited the cruiser.  Officer Houseberg went around the side of the house in order to monitor the back and prevent Thomas from exiting through the back of the house.  Officer Brumfield went to the front door and kicked the door open.   Officer Houseberg heard Officer Brumfield giving Thomas commands to get on the ground and so Officer Houseberg followed them into the house.  Officer Houseberg deployed his taser on Thomas and the officers took Thomas into custody.  Thomas had a firearm on his right side and the magazine on his left side.

{¶ 5}    Officer Bryan Blumfield testified that he and Officer Houseberg were on patrol and saw a magazine and holster on Thomas as he was walking eastbound on Hildreth Avenue.  Officer Brumfield stated he saw Thomas look back toward the cruiser and then move his shirt to cover the magazine.  Officer Brumfield testified that he asked Thomas whether he had a permit for that pistol.  Thomas answered, he "did not have a gun" and then he turned to his right and Officer Brumfield saw "a clear outline of the firearm on his hip." (Tr. at 40-41.)  Thomas then "made a straight dash into the house." (Tr. at 28.)  Officer Brumfield stated Thomas was "running" inside and the officer pursued him. (Tr. at 41.)

{¶ 6} Officer Brumfield stated that he followed Thomas into the house. The screen door was open, but the front door was closed so he kicked it open. When Officer Brumfield was struggling to get one of Thomas' hands behind his back, Thomas' shirt lifted and the firearm was visible. (Tr. at 33.) Officer Brumfield testified that carrying a magazine without a firearm is not a crime.

{¶ 7} Thomas called two witnesses. The first witness was Darlene Williams who lives at 1436 Hildreth Avenue with her husband and three children. She had invited Thomas over for a party for her birthday. She drove Thomas to her house and he had been there approximately two hours when he walked to the corner store to buy potato chips. She drove to the liquor store at the same time. As she returned, she parked in front of her house and Thomas had also returned and was walking onto the porch. Williams heard the police officer ask Thomas if he had a permit and Thomas denied having a weapon. Thomas then went into the house and closed the door. Williams stated that the officer "jumped out of the car with his gun" and "kicked the door." (Tr. at 53.) Williams heard the officer tell Thomas, "Get the F down, get the F down." (Tr. at 53.) She did not enter the house because the officers told her family to stay outside, but she could see Thomas on the ground and an officer with his taser and gun drawn. (Tr. at 53.)

{¶ 8} The final witness was Sabrea Watts, Williams' daughter. Watts testified that she lives at 1436 Hildreth Avenue with her parents and siblings. She attends Wright State University but was home during the summer. Thomas was at her house for a birthday party. He had been at the house for several hours when he walked to the store. Watts was sitting on the front porch when Thomas returned with chips. Watts testified that when Thomas was opening the screen door, the police officers stopped in front of her house and asked Thomas if he had a permit. Watts recalled that Thomas denied having a weapon and went inside the house. The police officers followed Thomas with their guns drawn and kicked open the door. (Tr. at 70-71.) Watts stated that Thomas was on the ground but the officers were yelling, "Get the fuck on the ground, get the fuck on the ground." (Tr. at 71.) Watts saw the officers use the taser on Thomas but never saw Thomas with a firearm. Watts testified that the door was slightly ajar when the officer kicked it open. (Tr. at 77.)

{¶ 9} After the hearing, the trial court concluded that the police officers did not have the legal authority to seize and search Thomas without a warrant. The trial court granted the motion to suppress.

## II. Assignments of Error

{¶ 10} The state of Ohio filed a timely notice of appeal and asserts four assignments of error:

> [I.] THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT THERE WAS NO PROBABLE CAUSE TO ARREST DEFENDANT AND WHEN IT FURTHER CONCLUDED THAT THE HANDGUN MUST BE SUPPRESSED BECAUSE OF THE LACK OF PROBABLE CAUSE AND REASONABLE SUSPICION.
>
> [II.] THE TRIAL COURT ERRED IN CONCLUDING THAT THE OFFICERS' ENTRY INTO THE RESIDENCE VIOLATED THE FOURTH AMENDMENT AND REQUIRED SUPPRESSION OF THE GUN.
>
> [III.] THE TRIAL COURT ERRED WHEN IT REFUSED TO APPLY THE GOOD-FAITH EXCEPTION.
>
> [IV.] THE TRIAL COURT ERRED WHEN IT HELD THAT THE NON-EXCLUSIONARY RULE ENUNCIATED BY *STATE v. LINDWAY*, 131 OHIO ST. 166 (1936), UNDER ARTICLE I, SECTION 14, OF THE OHIO CONSTITUTION HAD BEEN "EXPLICITLY AND IMPLICITLY OVERRULED BY THE UNITED STATES SUPREME COURT IN *MAPP v. OHIO*, 367 U.S. 643 (1961)."

## III. Standard of Review

{¶ 11} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. This court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997). Thus, " '[d]eterminations of reasonable suspicion and probable cause should be reviewed de

novo on appeal.' " *Columbus v. Ellyson*, 10th Dist. No. 05AP-573, 2006-Ohio-2075, ¶ 4, quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

## IV. Analysis

## A. First Assignment of Error

{¶ 12} The state contends in its first assignment of error that the trial court erred when it concluded that there was no probable cause to arrest Thomas and when it further concluded that the handgun must be suppressed because of the lack of probable cause and reasonable suspicion.

{¶ 13} The trial court found that the officers did not have the legal authority to seize and search Thomas without a warrant because they did not have reasonable suspicion of criminal activity to justify a *Terry* stop[1] and thus, they did not have probable cause to justify invoking the exigent circumstances exception to the warrant requirement. The trial court determined that the Constitutions of the United States and Ohio do not permit the officers to chase a defendant, kick in the door to a house the defendant had been invited into, and tase him when the underlying concern was the commission of a legal act in carrying a firearm.

{¶ 14} "The Fourth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment, as well as the Ohio Constitution, Article I, Section 14, prohibit the government from conducting warrantless searches and seizures, rendering them per se unreasonable unless an exception applies." *State v. Hairston*, 10th Dist. No. 16AP-294, 2017-Ohio-7612, ¶ 9, quoting *State v. Goodloe*, 10th Dist. No. 13AP-141, 2013-Ohio-4934, ¶ 6, citing *State v. Mendoza*, 10th Dist. No. 08AP-645, 2009-Ohio-1182, ¶ 11, citing *Katz v. United States*, 389 U.S. 347, 357 (1967). The United States Supreme Court recognizes three categories of police interaction with citizens: a consensual encounter, an investigatory detention, and an arrest. *In re Parks*, 10th Dist. No. 04AP-355, 2004-Ohio-6449, ¶ 7, citing *Florida v. Royer*, 460 U.S. 491 (1983).

{¶ 15} A consensual encounter occurs when the police approach a person in a public place, the police engage the person in a conversation and the person remains free not to answer or to walk away. *United States v. Mendenhall*, 446 U.S. 544, 555 (1980).

---

[1] *Terry v. Ohio,* 392 U.S. 1 (1968).

Even if the police ask questions and ask to see the person's identification or to search belongings, the encounter remains consensual as long as, " 'the police do not convey a message that compliance with their requests is required.' " *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, ¶ 11, quoting *Florida v. Bostick*, 501 U.S. 429, 435 (1991). A consensual encounter does not involve the Fourth Amendment. *In re Parks* at ¶ 7. If a police officer restricts the freedom to walk away, the result is a "seizure" of the individual and the officer's conduct implicates the Fourth Amendment. *Id.*, citing *Brown v. Texas*, 443 U.S. 47, 52 (1979). To determine whether a seizure occurs, the question is whether, in view of all the circumstances, a reasonable person would believe he or she was not free to leave. *State v. Moyer*, 10th Dist. No. 09AP-434, 2009-Ohio-6777, ¶ 13, citing *State v. Bell*, 6th Dist. No. L-03-1015, 2004-Ohio-1327, ¶ 19, quoting *Mendenhall* at 554.

{¶ 16} The second category of police-citizen interaction is an investigatory detention, based on *Terry v. Ohio*, 392 U.S. 1 (1968). Pursuant to *Terry*, a police officer may stop an individual without probable cause when the officer has a reasonable suspicion based on articulable facts that criminal activity is happening or about to happen. *Terry* at ¶ 14. An appellate court views the propriety of a police officer's investigative stop in light of the totality of the surrounding circumstances. *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph one of the syllabus.

{¶ 17} The third category of police-citizen interaction is a seizure that is equivalent to an arrest. "A seizure is equivalent to an arrest when: 1) there is an intent to arrest; 2) the seizure is made under real or pretended authority; 3) it is accompanied by an actual or constructive seizure or detention; and 4) it is so understood by the person arrested." *State v. Taylor*, 106 Ohio App.3d 741, 749 (2d Dist.1995).

{¶ 18} The trial court found that the officers engaged in a consensual encounter with Thomas as he approached the porch of 1436 Hildreth Avenue after they had viewed an ammunition magazine underneath Thomas' shirt. At that point, Thomas was free to leave and the fact the officers then observed the outline of a firearm in Thomas' right hip did not elevate the interaction into an investigatory stop. The trial court found that the police officers did not have reasonable suspicion of criminal activity to justify a *Terry* stop because the possession of a firearm is not evidence of criminal activity.

{¶ 19} When the officers asked Thomas whether he had a permit, they engaged in a consensual encounter that does not involve the Fourth Amendment. However, we must determine whether Thomas was "seized." Considering the totality of the circumstances in this case, it is clear that when the officers rushed out of the marked cruiser with their guns drawn, kicked the door open, yelled at Thomas repeatedly to, "get the F down" and then used a taser on Thomas, no reasonable person would have believed he was free to leave and Thomas was "seized" within the meaning of the Fourth Amendment.

{¶ 20} We next consider whether Thomas' seizure was reasonable. To be lawful, a *Terry* stop " 'must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity.' " *United States v. Black,* 707 F.3d 531 (4th Cir.2009), quoting *Reid v. Georgia,* 448 U.S. 438, 440 (1980). There must be a " 'particularized and objective basis for suspecting the particular person stopped of criminal activity.' " *United States v. Griffin,* 589 F.3d 148, 152 (4th Cir.2009), quoting *United States v. Cortez,* 449 U.S. 411, 417-18 (1981). "The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch" of criminal activity.' " *Illinois v. Wardlow,* 528 U.S. 119, 124 (2000), quoting *Terry* at 27.

{¶ 21} Here, the totality of the facts fail to support the conclusion that the officers had reasonable and articulable suspicion to detain Thomas. The state argues that since Thomas possessed a firearm underneath his shirt and ammunition, the officers had reasonable and articulable suspicion. However, as the trial court properly noted, "under Ohio law, possession of ammunition and/or a firearm, in and of itself, is not evidence of criminal activity. * * * Ohio citizens have the right to arm themselves." (Dec. 8, 2016 Entry at 5-6.) Consequently, Thomas did not have any obligation to answer the officers' questions. Furthermore, Thomas did not flee from the officers. Officer Houseberg testified Thomas used "a brisk walk" (Tr. at 24), and Williams and Watts testified that Thomas was already opening the screen door when Officer Brumfield asked him whether he had a permit. (Tr. at 51; 70.) Under these circumstances, the officers did not have a reasonable and articulable suspicion to seize Thomas. The state's first assignment of error is overruled.

**B. Second Assignment of Error**

{¶ 22} In the second assignment of error, the state contends that the trial court erred in concluding that the officers' entry into the residence violated the Fourth Amendment and required suppression of the firearm.

{¶ 23} "Searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). In *Kirk v. Louisiana*, 536 U.S. 635, 637-38 (2002), the United States Supreme Court examined the *Payton* decision further, as follows:

> In *Payton*, we examined whether the Fourth Amendment was violated by a state statute that authorized officers to 'enter a private residence without a warrant and with force, if necessary, to make a routine felony arrest.' * * * We determined that 'the reasons for upholding warrantless arrests in a public place do not apply to warrantless invasions of the privacy of the home.' * * * We held that because "the Fourth Amendment has drawn a firm line at the entrance to the house...[, a]bsent exigent circumstances, that threshold may not reasonably be crossed without a warrant.'

(Citations omitted.) *Id.* at 637-38, quoting *Payton* at 590.

{¶ 24} Thus, since the officers did not possess a reasonable and articulable suspicion, they did not possess probable cause. Without probable cause and exigent circumstances or a search warrant, they could not chase Thomas into the residence. While it may have appeared to be, this was not an instance where martial law was in effect. The United States Constitution and the Ohio Constitution safeguard our rights as citizens to be free from warrantless seizure or entry by the police into our homes.

{¶ 25} Contrary to the state's assertion, the facts in this case do not support the existence of exigent circumstances. An exception to the warrant requirement " 'permits warrantless felony arrests in the home if both probable cause to arrest and exigent circumstances are present.' " *State v. Enyart*, 10th Dist. No. 08AP-184, 2010-Ohio-5623, ¶ 18, quoting *State v. Jenkins*, 104 Ohio App.3d 265, 268 (1st Dist.1995), citing *Payton* at 583-90. " ' An exigent circumstance is one that prompts police officers to believe either that a person in the home is in need of immediate aid to prevent a threat to life or limb, or that immediate entry is necessary to stop the imminent loss, removal, or destruction of evidence or contraband.' " *Id.* at ¶ 20, quoting *State v. Karle*, 144 Ohio App.3d 125, 131

(1st Dist.2001). The state has the burden of demonstrating exigent circumstances. *Id.* An objective test that looks at the totality of the circumstances confronting the police officers at the time of entry is used to determine whether exigent circumstances exist. *Id.* at ¶ 21, citing *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir.1990). " '[A] warrantless entry to prevent the destruction of evidence is justified if the government demonstrates: "(1) a reasonable belief that third parties are inside the dwelling; and (2) a reasonable belief that these third parties may soon become aware the police are on their trail, so that the destruction of evidence would be in order." ' " *Id.* at ¶ 21, quoting *United States v. Lewis*, 231 F.3d 238, 241 (6th Cir.2000), quoting *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1512 (6th Cir.1988).

{¶ 26} The state argues that exigent circumstances existed because of the fear of an imminent destruction of evidence, the danger the firearm posed to others, and the hot-pursuit doctrine. The totality of the circumstances reveal that none of the exceptions were supported. Thomas answered the officers' questions before terminating the consensual encounter, as was his right, by walking into the house. The officers gave no indication to Mrs. Williams of any exigent circumstance requiring them to enter the house or warning that supports the state's assertion that the officers believed the firearm posed a danger to anyone. Nor was there evidence presented by the state to support its assertion that the officers reasonably believed that destruction of the firearm was imminent. The record does not demonstrate that at the moment Thomas entered the house, he was even aware that the officers were exiting the cruiser with the intention of pursuing and seizing him. Because the officers failed to provide any testimony to support a finding of exigent circumstances, the trial court properly found exigent circumstances did not exist under these facts. Since we have determined the trial court did not err in finding that no probable cause existed, there is no basis to invoke the exigent circumstances exception to the warrant requirement. Warrantless felony arrests inside a residence are permitted if both probable cause and exigent circumstances exist. The state's second assignment of error is overruled.

## C. Third Assignment of Error

{¶ 27} As the third and fourth assignments of error are related, we shall address them together. In its third assignment of error, the state contends that the trial court

erred when it refused to apply the good-faith exception.  In its fourth assignment of error, the state argues that the trial court erred when it held that the non-exclusionary rule as set forth in *State v. Lindway*, 131 Ohio St. 166 (1936) has been "explicitly and implicitly overruled by the United States Supreme Court in *Mapp v. Ohio*, 367 U.S. 643 (1961)."

{¶ 28} "Except in circumstances where an established exception exists, the United States Constitution has been interpreted to presume that arrests and searches are unreasonable if not conducted pursuant to a warrant." *State v. Dickman*, 10th Dist. No. 14AP-597, 2015-Ohio-1915, ¶ 22.  The exclusionary rule provides that when a violation of the Fourth Amendment occurs, items obtained through such violations are not to be used in court. *Id*.  However, the fact that a Fourth Amendment violation occurred does not necessarily mean that the exclusionary rule applies.  *Herring v. United States*, 555 U.S. 135, 140 (2009).  The United States Supreme Court has stated that "exclusion 'has always been our last resort, not our first impulse.' " *Id*., quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006).  The exclusionary rule applies when it results in " 'appreciable deterrence.' " *Id*. at 141, quoting *United States v. Leon*, 468 U.S. 897, 909 (1984).  "[T]he question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." *Id*. at 137.

{¶ 29} There are exceptions to the exclusionary rule.  For example, in *Leon*, the court held that when police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted "in objectively reasonable reliance" on the subsequently invalidated search warrant.  *Leon* at 922.  The court called this objectively reasonable reliance "good faith." *Id*.  "The Court has over time applied this 'good-faith' exception across a range of cases." *Davis v. United States*, 131 S.Ct. 2419, 2428 (2011).

{¶ 30} The state argued to the trial court that the federal exclusionary rules should not be applied to suppress the evidence in this case because it is in the best interest of society to assure that the crowded streets are free of improper firearms and the Ohio Constitution does not provide an exclusionary rule for search and seizure violations pursuant to *Lindway*.

{¶ 31} The trial court determined that the state "did not and could not argue the 'Good Faith Exemption' applies in the Instant matter." (Dec. 8, 2016 Entry at 7.)  The trial

court further found that *Lindway* was explicitly and implicitly overruled in *Mapp v. Ohio*, 367 U.S. 643 (1961).

{¶ 32} This court has recently explained that despite the state arguing that the "good faith exception" should be given a broad application, Ohio courts, including this court, have "declined to apply the exception to the rule 'in cases in which officers, conducting warrantless searches, relied on their own belief that they were acting in a reasonable manner, as opposed to relying upon another's representations.' " *Dickman* at ¶ 26, quoting *State v. Thomas*, 10th Dist. No. 14AP-185, 2015-Ohio-1778, ¶ 43, citing *State v. Forrest*, 10th Dist. No. 11AP-291, 2011-Ohio-6234. This court reaffirmed that " ' "*Leon's* good-faith exception applies only narrowly, and ordinarily only where an officer relies, in an objectively reasonable manner, on a mistake made by someone other than the officer." ' " *Id.*, quoting *Thomas* at ¶ 47, quoting *United States v. Herrera*, 444 F.3d 1238, 1249 (10th Cir.2006). In this case, the officers did not rely on laws or precedent that have changed these settled principles. Simply put, the conduct of the officers in this case, which included a destructive entry into a home with no warrant, no probable cause, and no exigent circumstances, cannot and will not be excused by invoking an exception to the exclusionary rule. Thomas correctly describes their behavior as "acutely egregious." (Appellee's brief at 53.) We agree. To apply the exclusionary rule under these facts would degrade the protections of the Fourth Amendment. This case merits no finding of a good-faith exception to the exclusionary rule.

{¶ 33} Finally, the state argues that the Ohio Constitution does not provide an exclusionary rule for search and seizure violations pursuant to *Lindway*. In *Lindway*, the Supreme Court of Ohio determined that the exclusionary rule does not apply to searches and seizures found to be in violation of the Ohio Constitution. As recognized by this court in *State v. Kosla*, 10th Dist. No. 13AP-514, 2014-Ohio-1381, ¶ 19, *Lindway* has been expressly overruled in the context of violations of the Fourth Amendment to the United States Constitution.

{¶ 34} While the Supreme Court of Ohio has not expressly overruled *Lindway*, the court's subsequent decisions appear to have significantly limited, if not eliminated, its precedential value. For example, in *State v. Chatton*, 11 Ohio St.3d 59, 63 (1984), fn 4 (superseded by statute regarding temporary tags), the court, in discussing the good-faith

exception to the federal exclusionary rule, stated, "even should a good faith exception to the federal exclusionary rule be recognized for Fourth Amendment purposes, the question remains whether we would likewise recognize such an exception under Section 14, Article I of the Ohio Constitution."

{¶ 35} Further, the Ohio appellate courts that have considered *Lindway* have acknowledged its diminished precedential value. *See State v. Watson*, 117 Ohio App. 333, 339 (9th Dist.1962)("As a consequence of [*Mapp*], the rule of *State v. Lindway* * * * no longer prevails in this state"); *State v. McCarthy*, 20 Ohio App.2d 275, 281 (8th Dist.1969). Even this court has set forth that "*Lindway* has been * * * overruled * * * by implication for violations of the Ohio Constitution." *Kosla* at ¶ 20. The state's third and fourth assignments of error are overruled.

## V. Conclusion

{¶ 36} For the foregoing reasons, appellant's four assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK and BRUNNER, JJ., concur.

_____